75757. ESQUIRE CARPET MILLS, INC. et al. v. KENNESAW
TRANSPORTATION, INC. et al.

(367 SE2d 569)

SOGNIER, Judge.

Esquire Carpet Mills, Inc. and Al Couch d/b/a Esquire Carpet Mills (collectively Esquire) instituted suit against Kennesaw Transportation, Inc. (Kennesaw) and its president and sole shareholder, seeking damages for losses incurred when Kennesaw claimed a lien for unpaid freight charges and retained possession of a shipment of Esquire's carpet which had been loaded onto Kennesaw's truck in Georgia for delivery to Esquire's customers in the western United States. Kennesaw answered and counterclaimed for the freight charges on the undelivered shipment. The trial court directed a verdict in favor of Esquire on Kennesaw's counterclaim, and no appeal is brought from the judgment entered thereon. Esquire brings this appeal from the judgment entered on the trial court's order directing a verdict in favor of Kennesaw on the main claim.

Appellee claimed its lien under OCGA § 46-9-191, which provides, in pertinent part, that "[w]hen a carrier has complied with his contract as to transportation, he shall have a lien on the goods for the freight charges and may retain possession until the lien is paid, *unless this right is waived by special contract* or actual delivery of the goods. If the goods are delivered, the carrier acquires a lien for the freight charges on and may until the lien is paid retain possession of other goods belonging to the debtor which come into the possession of the carrier." (Emphasis supplied.) The record reveals that in April 1986 appellee submitted to appellant a written proposal of costs for its shipping services. After one truckload had been picked up, a letter was sent to appellant by appellee confirming the payment terms agreed to by the parties, which showed that appellee would bill appellant on the date the carpet was loaded, and that appellant would pay "one-half in fifteen days and the balance in another fifteen days." After having picked up three loads of carpet, which were delivered without incident, appellee loaded a fourth shipment of carpet from appellant on May 25, 1986, for delivery to customers in Arizona and California. On May 27, 1986, after delivering a small portion of that

shipment to its proper destination in Arizona, appellee halted its delivery of the fourth truckload of carpet, which was then in California, and imposed a possessory lien for unpaid freight charges, under the authority of OCGA § 46-9-191. The shipment was later stored by appellee in a public warehouse in Fullerton, California. On that date, $2,900 in matured installment payments was due and owing to appellee from appellant, representing the first installment on each of the first two shipments. This sum was received by appellee in payment from appellant on the following day, May 28th. Under the parties' agreement as to payment terms, no further payment was due until May 29th. After making the first two installment payments on May 28, 1986, appellant did not meet the dates for payment as required by the parties' agreement, but by July 16, 1986, appellant had paid appellee in full for the first three shipments. Appellee continued to retain possession of shipment four until April 15, 1987, when appellant obtained a court order releasing the carpet upon payment of a bond.

1. We agree with appellant that the trial court erred by directing a verdict in favor of appellee. "It is elementary that a verdict may not be directed unless there is no conflict in the evidence and that introduced, with all reasonable deductions or inferences therefrom, shall demand a particular verdict. [Cits.]" *Stuckey v. Kahn,* 140 Ga. App. 602, 606 (2) (231 SE2d 565) (1976).

Pretermitting the question whether appellee had the right to assert a lien during the period from May 27, 1986 through July 16, 1986, it is uncontroverted that after the July 16, 1986 payments were made by appellant, no freight charges remained unpaid for goods as to which appellee, the carrier, "ha[d] complied with [its] contract as to transportation," OCGA § 46-9-191, and therefore appellee was not entitled to continue asserting its lien on the fourth shipment after that time. Thus, a jury could have concluded that appellant was entitled to damages, and a verdict in favor of appellee was not demanded. Further, even assuming that appellee had the right to assert a lien during the period between May 27th and July 16th, the evidence is in conflict as to whether, in doing so, appellee demanded a sum in excess of the entire amount due under all four contracts before it would release its lien, as claimed by appellant, or whether, as maintained by appellee, only the amount due under the contracts was demanded. "Liens are statutory remedies created in derogation of the common law and are strictly construed. [Cit.]" *Metro Properties v. City of Dalton,* 161 Ga. App. 711, 714 (2) (288 SE3d 745) (1982). If appellee demanded a greater sum than was owed, appellee's assertion of its lien was improper, as "[o]ne claiming a lien must clearly bring himself within its terms. [Cits.]" *Georgia-Pacific Corp. v. Dan Austin Properties,* 126 Ga. App. 191 (190 SE2d 131) (1972), aff'd 229 Ga. 803 (194 SE2d 472). Since the facts are disputed, the jury should have been

allowed to resolve them, and it follows that appellee was not entitled to a directed verdict in its favor.

2. Nor do we agree with the trial court that appellant could not recover as a matter of law because it failed to prove its damages, even if appellee's retention of the goods was improper. Since at the time of trial appellant had recovered the goods, the measure of its damages would be that for failure of the carrier to deliver the goods within a reasonable time, i.e., the difference between the market value at the time and place they should have been delivered and the market value at the time of actual delivery. See OCGA § 46-9-43. The record discloses that Couch testified as to the value of the carpet in California at the time it should have been delivered, and the value of the carpet in Georgia when released. There was also evidence of consequential damages in the record, including travel expenses incurred when appellant was forced to placate its customers whose carpet had not been delivered on time, and interest expenses incurred when it was compelled to finance and reship replacement carpet. The fact that the fourth shipment was eventually returned to appellant by court order before trial, and that appellant was able to sell it, would be relevant only in mitigation of the damages. See OCGA § 13-6-5; *Kingston Pencil Corp. v. Jordan*, 115 Ga. App. 333, 334 (1) (154 SE2d 650) (1967). There was sufficient evidence from which the jury could have determined whether appellant was entitled to damages, and if so, in what amount.

3. Since this case must be retried, we address several rulings made by the trial court which may recur. First, the trial court found that the agreement between the parties was a single contract. We do not agree. Under the clear and unambiguous terms of the letters to appellant, appellee *offered* to ship any goods presented by appellant at certain prices and on certain terms. This was a continuing offer, and became a contract with regard to each separate shipment only when appellant accepted the offer and engaged appellee's services. It is not disputed that, had it desired to do so, appellant could have engaged the services of some other carrier to haul any of the shipments at any point, without breaching any agreement with appellee. Similarly, until the offer was accepted, appellee was free to change it. The actual contract was created each time the parties agreed that a particular shipment of carpet would be picked up and delivered to definite destinations, at the offered price and terms. See OCGA § 13-3-2.

Second, the trial court found that appellant was never sufficiently caught up in its payments to appellee under the contract to require the release of appellee's lien before July 16, 1986. However, as OCGA § 46-9-191 permits, appellee's right to a lien for payment of the freight charges was clearly waived, or at least modified, by the special

contract between the parties which provided that no payment was due until 15 days after loading, despite the fact that goods had been delivered prior to that time. Thus, unless the payment was due under the *contract*, no lien attached. To construe the parties' agreement or the statute otherwise would mean that, despite their agreement that no payment was yet due on the first shipment, appellee could have seized the second or third shipment, declaring its lien under the authority of the statute, in clear contravention of the parties' agreement regarding payment terms. We decline to construe the statute or the agreement in this manner. No matured payments were outstanding on May 28th after appellee received the first installment payments on the first two shipments, and appellee had no right to continue holding the seized fourth shipment at that point. Thus, unless some other basis for the lien was shown, appellee would not have been entitled to assert its lien after all matured installments had been paid on May 28th, until such time as other matured installments were due and unpaid. Although appellee argues that it was entitled to assert its statutory lien because appellant's payment history suggested that future payments might not be made, appellee did not elect to repudiate any of the contracts immediately upon breach by the appellants, as would be required under the case law applicable to anticipatory breach. See *Smith v. Ga. Loan &c. Co.*, 113 Ga. 975, 977 (39 SE 410) (1901). Instead, appellee continued to hold open its offer to extend credit to appellant for shipping, and loaded new shipments. Ordinarily, "[t]he breach which will form the basis for this type of action is an unqualified repudiation of the entire contract prior to the time for performance . . . . The repudiation must go to the whole contract. [Cit.]" *Continental Cas. Co. v. Stephenson*, 112 Ga. App. 666, 667 (2) (145 SE2d 825) (1965). It would be a question for the jury whether appellant's late payment, together with any other information available to appellee, constituted a repudiation of the contract, sufficient to amount to anticipatory breach.

4. We find no merit in appellee's argument that, under the first sentence of OCGA § 46-9-191, appellee was entitled to a second lien, which continued to the time of trial, for unpaid freight charges on the seized fourth shipment. The statute clearly requires compliance with the contract for transportation of the goods as a condition precedent to acquiring a lien for unpaid freight charges, and thus appellee could not acquire a lien on goods which it refused to deliver.

*Judgment reversed and case remanded. McMurray, P. J., and Beasley, J., concur.*

Decided March 1, 1988 —
Rehearing dismissed March 15, 1988.

*Carl V. Kirsch*, for appellants.
*Roy E. Barnes, Jeffrey G. Casurella*, for appellees.