A99A1776. BRANDON v. NEWMAN.
(532 SE2d 743)

MILLER, Judge.

The question presented is whether an attorney's unethical reward to a nonlawyer for a referral resulting in the attorney's employment invalidates the attorney's claim of lien against settlement proceeds. We hold that an attorney's express employment contract[1] obtained through a violation of Disciplinary Standard 13 of Bar Rule 4-102 (d) is itself void as against public policy and therefore affirm the trial court's forfeiture of the lien.

The following chronology in this claim for a $40,000 attorney's lien is undisputed: Appellee Raymond Warren Newman, Jr. was injured in a vehicular mishap. Acting on the advice of Bobby Gay Beazley, a former member of the bar no longer authorized to practice law in Georgia,[2] Newman retained attorney no. 1 to pursue a tort claim against a trucking company, its driver, and its insurer. Without filing suit, attorney no. 1 obtained a settlement offer from the insurer of "around $120,000," consisting of $95,000 plus lost wages. Newman rejected this offer as too low and fired attorney no. 1.

---

[1] No question of recovery in quantum meruit is presented.

[2] See *State Bar of Ga. v. Beazley*, 256 Ga. 561 (350 SE2d 422) (1986).

Beazley then introduced Newman to attorney no. 2 (appellant-claimant Keith F. Brandon), and in a written agreement dated October 1, 1996, Newman retained Brandon to pursue his tort claim. In addition to a contingency fee, the retainer agreement contemplated that, in the event Newman dismissed Brandon, the fee would be the greater of a $150 hourly rate or the applicable percentage fee (40 percent after filing suit) based on "any offers . . . made by any adversary or collateral party. . . ." That same day, Brandon's law firm entered into an agreement with Beazley whereby Beazley agreed to assist the firm in obtaining medical and other documentation; in interviewing witnesses; in filing pleadings or other documents; and in preparing any settlement demand proposals for the prosecution of Newman's tort claim. In return, the firm agreed to pay Beazley 25 percent of the net proceeds paid to the firm from any settlement or recovery of that claim. Payment to Beazley would be made "contemporaneously" with the distribution of any proceeds to the firm.

Brandon filed suit and received an initial offer to settle Newman's case for $50,000 from the insurer. Brandon countered with an offer of $400,000. In April 1998, right before the case went to trial, the insurer made a $100,000 offer to Brandon. According to Brandon, he communicated this offer to Newman, who rejected it. In August, Newman dismissed Brandon and retained attorney no. 3. In response to requests to forward Newman's file to attorney no. 3, Brandon filed a Notice of Attorney's Lien. The insurer renewed its $100,000 offer to attorney no. 3, and Newman accepted.

Newman filed a motion for "Forfeit and Cancellation of Attorney's Lien," contending that Brandon's retainer agreement was an unauthorized referral grounded in an illegal fee-splitting arrangement with a nonlawyer, in violation of Directory Rule 3-102. In support of this motion, Newman showed that Beazley himself described his contingent fee arrangement as arising out of his referral of Newman to Brandon.[3] At the evidentiary hearing on Newman's motion, Brandon admitted that, "to the extent that Mr. Beazley is a nonattorney, then [splitting a fee with a nonlawyer is] what the contract does." Brandon eschewed any claim in quantum meruit and did not

---

[3] Other evidence showed that Beazley prepared settlement brochures for attorney no. 1, until attorney no. 1 was fired, and Beazley offered Brandon his services in arranging a psychiatric examination of Newman at the Medical College of Georgia, since, in Beazley's assessment, the case represented "one million seven hundred thousand [dollars in] coverage and clear liability." Beazley also offered, "if it would work, [to] file a lien and blow him [attorney no. 1] out of the water and then drop the lien." Brandon was informed that Beazley has a new case where an insurance company improperly cancelled a man's policy and is leaving him open to suit. As soon as I [Beazley] have an affidavit from this man, I will submit to you to see if you wish to handle. See *State Farm Mutual Ins. Co. v. Drury*, [222 Ga. App. 196 (474 SE2d 64) (1996)].

support his claim with billing records but sought $40,000 as the contingent fee Newman agreed to pay despite dismissing Brandon, based on the $100,000 offer to settle Brandon received before his dismissal.[4]

The trial court was inclined to agree with this contention, if the retainer agreement were valid. But the trial court concluded that Brandon had engaged in conduct proscribed by DR 3-102 by rewarding nonlawyer Beazley for recommending Brandon and so ruled that the employment agreement resulting from that conduct is void as against public policy. Consequently, Newman's motion to forfeit and cancel Brandon's lien was granted. Brandon enumerates this ruling as error, arguing (1) the trial court based its ruling on inadmissible hearsay and documents never tendered or admitted into evidence; (2) there is no evidence to support the conclusion Brandon's employment agreement is void as against public policy; and (3) Brandon was denied an opportunity to defend against this theory because the issue was not raised or argued in the trial court.

1. Brandon's contention that the record is devoid of argument based on public policy is without merit. Newman's written motion clearly objected to enforcement of the lien based on conduct alleged to violate DR 3-102. That is sufficient particularity under OCGA § 9-11-7 (b) (1) to put Brandon on notice of a defense to his claim of attorney's lien based on public policy or illegality.

2. At the evidentiary hearing, Brandon raised no objection, based on hearsay or otherwise, to the documents read aloud and obviously considered by the trial court. Consequently, formal tender was waived.[5] And while it is true that ordinary hearsay is wholly without probative value even if not objected to,[6] admissions against the pecuniary interest of third persons shall be received in evidence where the admissions pertain to collateral facts.[7] Thus, statements in letters by Beazley, demonstrating his contingent fee-splitting agreement was void as an impermissible reward for his referral of Newman to Brandon, were probative and admissible over hearsay objections.[8] Moreover, Beazley's letters were corroborated by Brandon's admission in open court that his contract with Beazley amounted to splitting a legal fee with a nonlawyer.

3. The remaining enumeration of error is that the determination

---

[4] See *Morrow v. Stewart*, 197 Ga. App. 689, 690 (399 SE2d 280) (1990).

[5] *Armstrong v. Cal. Fed. Sav. &c. Assn.*, 192 Ga. App. 508, 509 (1) (385 SE2d 113) (1989).

[6] *Higgins v. Trentham*, 186 Ga. 264, hn. 1 (197 SE 862) (1938).

[7] *Cobb v. Garner*, 158 Ga. App. 110, 112 (3) (279 SE2d 280) (1981).

[8] See *Hill v. Reynolds*, 19 Ga. App. 334 (3) (91 SE 434) (1917) (letters showing conspiracy admissible over objections that " 'said letters were personal letters written by said (third person). . .' "; and that " 'they [were] ex parte statements and defendant has had no chance to cross-examine the witnesses' ").

of the trial court is not supported by any evidence.

(a) Findings of fact made after a nonjury evidentiary hearing shall not be set aside unless clearly erroneous.[9] Brandon's solemn admission in judicio that his contract amounts to a fee-splitting agreement with a nonlawyer is a sufficient predicate to establish that fact under OCGA § 24-4-24 (b) (7).[10] But whether that fact leads to the conclusion that Brandon's retainer contravenes public policy is a question of law, which is freely reviewable.[11]

(b). In Georgia,

> parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears. This ancient rule is applicable to all the private relations in which persons may place themselves towards each other.[12]

And,

> [a] contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.[13]

The General Assembly recognized the role of the Supreme Court of Georgia in regulating the legal profession.[14] Exercising its authority, the Supreme Court created a unified State Bar[15] with mandatory membership for all persons authorized to practice law in this State.[16] In Georgia, the familiar Disciplinary Rules of the American Bar Association's Code of Professional Responsibility are adopted as aspirational Directory Rules, whereas the Supreme Court promulgated distinct Disciplinary Standards of Conduct which are the only basis for attorney discipline.[17]

---

[9] OCGA § 9-11-52 (a).

[10] *Grice v. Grice*, 197 Ga. 686, 698 (7) (30 SE2d 183) (1944).

[11] See, e.g., *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (trial court's application of law to undisputed facts is subject to de novo appellate review).

[12] (Citations and punctuation omitted.) *McCoy v. H. N. R. Investment Group*, 210 Ga. App. 645, 646 (2) (437 SE2d 355) (1993).

[13] (Citations and punctuation omitted.) *Dept. of Transp. v. Brooks*, 254 Ga. 303, 312 (1) (328 SE2d 705) (1985).

[14] Rules & Regs. for the Organization & Government of the State Bar of Georgia, Rule 1-101.

[15] Id.

[16] Rule 1-201 (1).

[17] Rules 4-101 and 4-102 (a). See also *Nat. Media Svcs. v. Thorp*, 207 Ga. App. 70, 71 (2) (427 SE2d 61) (1993).

The pertinent Disciplinary Standards provide the following: (i) "*A lawyer shall not* compensate or *give anything of value* to a person or organization to recommend or secure his employment by a client, or *as a reward for having made a recommendation resulting in his employment by a client*";[18] and (ii) "*A lawyer* or law firm *shall not share legal fees with a nonlawyer*, except" through a retirement plan including nonlawyer employees.[19]

In our view, the trial court correctly concluded that the State Bar disciplinary provisions establish the public policy disapproving rewards for referrals through fee-sharing agreements with nonlawyers. That public policy voids Beazley's unethical fee-splitting contract with Brandon. And the evidence further demands a finding that Brandon's otherwise standard and lawful contingent fee retainer agreement with Newman is inextricably entwined with that void referral, because Brandon's employment as an attorney is (in part) the illegal consideration for a prohibited reward and fee-splitting arrangement. Brandon's retainer with Newman is contrary to good morals and law, was entered into (in part) for the purpose of effecting an illegal or immoral agreement, and was obtained in violation of the applicable ethical standards which are enforceable in Georgia by disbarment. Consequently, we hold the express retainer agreement here is void under OCGA § 13-8-2 (a). Georgia courts will not enforce illegal or immoral contracts because so doing would implicate the judiciary by facilitating the illegality or immorality.[20] The trial court correctly granted Newman's motion to forfeit Brandon's OCGA § 15-19-14 (b) attorney's lien.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 28, 2000.

*Zimmerman & Associates, Keith F. Brandon,* pro se.
*Samuel W. Cruse,* for appellee.

---

[18] (Emphasis supplied.) Standard 13.

[19] (Emphasis supplied.) Standard 26. The applicable penalty for impermissible rewards and fee-splitting can be as severe as disbarment. We express no opinion whether Standard 24, regarding aiding the unauthorized practice of law, or Standard 73, regarding suspended or disbarred lawyers, is implicated.

[20] *Dept. of Transp. v. Brooks,* supra, 254 Ga. at 312 (1).