A00A0811. D. ROBERT AUTREY, JR., P.C. v. BAKER.
(536 SE2d 204)

ANDREWS, Presiding Judge.
Pursuant to this Court's prior decision in this matter, *D. Robert
Autrey, Jr., P.C. v. Baker*, 228 Ga. App. 396 (492 SE2d 261) (1997), the
trial court conducted a final hearing on D. Robert Autrey, Jr., P.C.'s
motion to foreclose its lien for attorney fees arising from representa-
tion of Elena S. Baker in her divorce. From the trial court's decision
concluding that the lien was improper and failed, Autrey (P.C.)[1]
appeals.

Pursuant to OCGA § 44-14-550 (5), a final hearing in a lien fore-
closure proceeding on an attorney's lien (OCGA § 15-19-14 (b)) is held
"on the validity of the debt if a further determination of the validity
of the debt is desired." See *P & B Corp. &c. v. One 1983 BMW*, 175
Ga. App. 462 (1) (333 SE2d 633) (1985).

Because lien laws, including the attorneys' lien statute, are in
derogation of the common law, they must be strictly construed. *Ellis,
Funk, Goldberg &c., P.C. v. Kleinberger*, 235 Ga. App. 360, 361 (1)
(509 SE2d 660) (1998). Further, on appellate review, a trial court's
determination of facts when acting as factfinder must be affirmed if
there is any evidence to support them. OCGA § 9-11-52 (a); *Brandon
v. Newman*, 243 Ga. App. 183 (532 SE2d 743) (2000); *Neal v. Nat. Gas
of Tenn.*, 222 Ga. App. 774 (1) (476 SE2d 73) (1996).

Viewing the evidence in favor of the trial court's factual findings,
it was that Autrey was brought into the Baker divorce by Baker's
lead counsel, Koehler, in late May 1995, solely for the purpose of pro-
viding insight and advice concerning tax consequences of proposals
for resolving the divorce, as well as to serve as liaison with certified
public accountants involved. At stake in the divorce were several mil-

---

[1] For clarity, the professional corporation will be referred to as "Autrey (P.C.)" while the
individual is referred to as "Autrey."

lion dollars.

From the beginning of his participation until November 16, 1995, no bills were submitted by Autrey (P.C.) to Baker for legal fees. Baker did pay Autrey $7,000 via two checks on June 1 and September 19, 1995. At some point, Autrey and Baker began to have an affair. By late October, Koehler and Autrey began having disagreements about the handling of the divorce, and, without Koehler's knowledge, Autrey began negotiating with Kaufman, Mr. Baker's attorney, concerning all aspects of the divorce. Koehler withdrew, and Mrs. Baker did eventually sign the divorce and custody agreement negotiated by Autrey. Asked by Autrey why she signed if she did not believe it was a fair and equitable settlement, Mrs. Baker answered:

> [b]ecause I had had a sexual relationship with you and you told me I could not go to court because a jury would find out about it because I had been followed and indeed, I had been followed. My husband had a private investigator following me for two months and he knew about our relationship, so because of that, I had to sign and you had advised me that if I went to court, I would get nothing, because I had committed adultery with you and I wouldn't get alimony and you said that I may possibly lose custody of my children. . . .

Only on November 6, 1995, after the settlement with her husband had been finalized, did Autrey (P.C.) and Mrs. Baker sign the Representation Agreement upon which the lien is premised. On November 16, 1995, the day the Bakers' divorce decree was finalized, Autrey hand-delivered to Mrs. Baker at her home a letter, including a bill, time sheets, and a demand for payment of $31,221.94, the amount included in the lien.

The trial court concluded that, according to testimony at the hearing as well as comparison of the respective bills presented by Koehler, Braver (CPA), and Autrey, "Autrey charged Baker in excess of the time actually spent on the matters the three of them together worked on in the case." Further, the court found "conduct on the part of Autrey during his representation of [Baker] that persuaded the Court to call the debt into question. . . . There was also a social relationship between the parties aside from the divorce case."

1. Autrey (P.C.)'s first enumeration is that the trial court erred in determining the merits because Baker, his former client, "never filed any defenses or defensive pleadings challenging the merits of the attorney fee liens."

This claim was determined adversely to Autrey (P.C.) in *D. Robert Autrey, Jr., P.C.,* supra at 396-397 (1). That holding is the law of

the case and cannot be further contested by Autrey (P.C.). *Ford v. Uniroyal Goodrich Tire Co.*, 270 Ga. 730 (514 SE2d 201) (1999); *Dicks v. Zurich American Ins. Co.*, 231 Ga. App. 448 (499 SE2d 169) (1998).

2. The second and third enumerations are that the court erred in finding the lien invalid and void because there were differences in the amount actually owed and the amount of the claimed lien and that there was insufficient evidence to reach such a conclusion. They are addressed together.

There is more than enough evidence of record to support the trial court's conclusion that the amount of the lien, as claimed, was disputed and had not been sufficiently proven for foreclosure. Despite Autrey (P.C.)'s argument to the contrary, such specific proof of amount is required in order to bring the claimant clearly within the law in order to foreclose on a lien. *Shirah Contracting Co. v. Waite*, 143 Ga. App. 355, 357 (1) (238 SE2d 728) (1977); *Bowen v. Collins*, 135 Ga. App. 221 (217 SE2d 193) (1975); *Jackson's Mill &c. Co. v. Holliday*, 108 Ga. App. 663, 665 (5) (134 SE2d 563) (1963); see *Ramsey v. Sumner*, 211 Ga. App. 202, 205 (5) (438 SE2d 676) (1993); *Esquire Carpet Mills v. Kennesaw Transp.*, 186 Ga. App. 367, 368 (1) (367 SE2d 569) (1988); *Ga.-Pacific Corp. v. Dan Austin Properties*, 126 Ga. App. 191 (190 SE2d 131) (1972).

Also, an additional impediment to Autrey's recovery under the contract between his professional corporation and Baker's Retainer Agreement exists. She and he, prior to the signing of the agreement, had engaged in an illicit and meretricious relationship which Baker contended adversely affected Autrey's representation of her. Such conduct on the part of an attorney may present a client with a defense to a claim of attorney's lien based on public policy. *Brandon v. Newman*, supra at 185 (1). Reading the trial court's order as a whole, we conclude that this was an additional basis upon which the lien was found improper. There was evidence to support this conclusion also.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JUNE 21, 2000.

*D. Robert Autrey, Jr.*, for appellant.
*Stephen E. Boswell, Philip S. Coe*, for appellee.