A11A0704. THE EICHHOLZ LAW FIRM, P.C. et al. v. TATE LAW GROUP, LLC et al.

(714 SE2d 413)

PHIPPS, Presiding Judge.

The Eichholz Law Firm, P.C. (the Eichholz firm) and Weinstock & Scavo, P.C. (the Weinstock firm) brought an action against Tate Law Group, LLC (the Tate firm) and Mark Tate for, inter alia, breach of two joint venture agreements between the Eichholz firm and the Tate firm, which agreements included provisions for splitting attorney fees. The Eichholz firm had assigned its interest in attorney fees under one of the joint venture agreements to the Weinstock firm. The trial court granted partial summary judgment to the Tate firm and Mark Tate, and denied partial summary judgment to the Eichholz firm and the Weinstock firm, on the issue of whether the Eichholz firm and the Weinstock firm could seek recovery pursuant to the fee-splitting provisions of the joint venture agreements.[1] For reasons that follow, we affirm.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law.[2] We review a ruling on a motion for summary judgment de novo, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] So viewed, the evidence showed the following.

In March 2008, Benjamin Eichholz, a principal of the Eichholz firm, and Mark Tate, a principal of the Tate firm, agreed to jointly

---

[1] The trial court denied summary judgment as to all other claims.

[2] *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

[3] See *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004).

represent clients in a wrongful death claim on behalf of an estate (the Estate Agreement). The Eichholz firm previously had agreed to represent the Estate clients in the case for a contingent attorney fee. The Estate Agreement provided that the Eichholz firm would receive a specified portion of the attorney fee obtained in connection with that claim, depending upon, inter alia, the point during the litigation process at which the case was resolved.

In February 2009, Benjamin Eichholz and Mark Tate agreed to jointly represent clients in product liability actions involving Oral Sodium Phosphate (the OSP Agreement). The OSP Agreement provided that the firms would "share all attorney's fees earned from these cases . . . on an equal, 50-50 basis." The record does not contain any evidence of the terms of the agreements, if any, that either the Tate firm or the Eichholz firm had with any OSP clients. The arguments set forth by the parties to this appeal in their briefs, however, indicate that the Eichholz firm and the Tate firm expected the OSP cases to generate contingent attorney fees.

In August 2009, Benjamin Eichholz was indicted in federal court for various offenses. That month, the clients in the Estate case terminated the Eichholz firm's representation of them. Meanwhile, the litigation addressed in the Estate Agreement was ongoing. In the fall of 2009, the Tate firm was working on approximately 300 OSP cases, and there had been no offers to settle any of those cases.

On December 8, 2009, the Eichholz firm entered into an agreement (the Assignment), by which it purportedly assigned to the Weinstock firm its interests in, pertinently, "any and all contractual rights [the Eichholz firm] currently possesse[d] to receive any sum of money, from any party, under . . . [t]he [OSP] Agreement." Subsequently, the Eichholz firm and the Weinstock firm amended the Assignment to provide that only a portion of the Eichholz firm's interest in attorney fees generated by OSP cases would be assigned thereunder.

In January 2010, Mark Tate wrote to the OSP clients seeking their signatures on a document that provided: "My signature affixed hereto this date certifies that I do not wish for the Benjamin Sheftal Eichholz, individual or law firm, its heirs or assigns, to have anything to do with my case whatsoever, including the payment of any fees which may be sought with regard to my case." In an affidavit, Mark Tate later stated:

> I explained [implications of Benjamin Eichholz's indictment] to each and every client and gave them the choice of continuing to be represented by Mr. Eichholz and his firm alone, or they could be represented by Tate Law Group. . . .

> Without exception, each client chose to be represented by Tate Law Group and not by Mr. Eichholz or his firm[.]

The record contains no evidence that any fees had been earned on OSP cases before the OSP clients terminated the Eichholz firm's representation.

In ruling on the parties' cross-motions for summary judgment and partial summary judgment, the trial court determined that the fee-splitting provisions of the OSP Agreement and Estate Agreement were unenforceable because the clients had terminated the Eichholz firm's representation before the occurrence of contingencies that would have given rise to the payment of attorney fees, and thus the Eichholz firm's recovery on the claims would be limited instead to quantum meruit. The court further determined that the Assignment of the Eichholz firm's interest in the OSP attorney fees was void.

1. The Eichholz firm and the Weinstock firm contend that the trial court erred in holding that the fee-splitting provisions of the OSP Agreement and Estate Agreement were unenforceable and that any recovery of the Eichholz firm for services performed under those agreements was limited to quantum meruit. As explained below, however, we find no error in the trial court's determination that the contract could not be enforced so as to permit a law firm to receive a portion of a contingent fee where its clients had terminated the firm's representation of them before the fee was earned.[4]

In Georgia, parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears.[5] But OCGA § 13-8-2 (a) provides that "[a] contract that is against the policy of the law cannot be enforced."[6]

"When the contingency justifying a fee has not yet occurred, the discharged attorney has no basis for collecting a fee connected to that contingency."[7] Applying this principle, we held in *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*[8] that a discharged attorney could not seek a portion of a contingent fee from another attorney with whom the discharged attorney previously had worked on the case, on the ground that "[t]o allow a discharged attorney to collect an equal share of a contingen[t] fee as if the attorney were still

---

[4] We do not hold or imply in our opinion that fee-splitting agreements between lawyers generally are unenforceable or that the decision of the Eichholz firm and the Tate firm to enter into fee-splitting agreements was improper.

[5] *Brandon v. Newman*, 243 Ga. App. 183, 186 (3) (b) (532 SE2d 743) (2000).

[6] OCGA § 13-8-2 (a).

[7] *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*, 277 Ga. App. 512, 513 (627 SE2d 112) (2006) (citation omitted).

[8] Id.

involved in a case would render the discharge meaningless."[9] To allow a discharged attorney to collect a share of a contingent fee after being discharged also would contravene Georgia Rules of Professional Conduct, Bar Rule 4-102 (d), Rule 1.5 (e) (2) which provides that a "division of a fee between lawyers who are not in the same firm may be made *only* if: . . . the client is advised of the share that each lawyer is to receive and does not object to the participation of all the lawyers involved."[10] The rule's clear intent is to prohibit the sharing of a legal fee with a lawyer against the will of the client, and a violation of the rule can be a ground for disciplinary action.[11]

The Eichholz firm and the Weinstock firm argue that *Kirschner & Venker* is inapposite because it concerned lawyers who had *not* entered into an express fee-splitting agreement. The existence of such an agreement between the lawyers does not affect the underlying policy against allowing a discharged lawyer to collect contingent attorney fees. Although the *Kirschner & Venker* decision acknowledges that a discharged lawyer's ability to seek recovery in quantum meruit would be foreclosed by the existence of an express agreement providing for fees in the event of termination,[12] this principle is inapplicable here, where the agreements between the Eichholz firm and the Tate firm contain no provisions addressing fee-splitting in the event of one party's termination, and the Eichholz firm has not sought in this action to seek fees through such a term in any of its client contracts (assuming such a term existed).[13]

The Eichholz firm and the Weinstock firm also contend that the requirements of Rule 1.5 (e) (2) of the Georgia Rules of Professional Conduct have no bearing upon the enforceability of the fee-splitting terms in the OSP Agreement and Estate Agreement. But *Davis v.*

---

[9] Id. at 514.

[10] (Emphasis supplied.) See generally *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 65-66 (2) (537 SE2d 670) (2000) (where State Bar disciplinary standards in force at the time required contingent fee agreements to be in writing, an oral contingent fee contract would violate public policy and thus would be unenforceable); *Brandon*, supra at 187 (3) (b) (holding that a lawyer's agreement to share fees with a nonlawyer was void as against public policy, because it violated State Bar disciplinary standards that prohibited such an agreement).

[11] See Georgia Rules of Professional Conduct, Bar Rule 4-101 ("The State Bar of Georgia is hereby authorized to maintain and enforce . . . Georgia Rules of Professional Conduct to be observed by the members of the State Bar of Georgia and those authorized to practice law in the State of Georgia and to institute disciplinary action in the event of the violation thereof."); see also Georgia Rules of Professional Conduct, Bar Rule 4-102 (d), Rule 1.5 (providing for the penalty of public reprimand for a violation thereof).

[12] See *Kirschner & Venker, P.C.*, supra at 513.

[13] The record shows that the Eichholz firm had a contract with the Estate clients that included an express term setting forth compensation the Eichholz firm would receive from the clients for its work in the event the clients terminated its representation of them. The record is silent on whether the Eichholz firm had contracts with the OSP clients containing similar terms.

*Findley*,[14] cited by the Eichholz firm and the Weinstock firm for their contention, is inapposite; that decision concerns limits on the use of the Georgia Rules of Professional Conduct to demonstrate a lawyer's affirmative duty of care in a legal malpractice action and does not address whether the Georgia Rules of Professional Conduct establish public policy that could limit an attorney's ability to agree to split fees.[15] And we disagree that our decision in *Camp v. Peetluk*,[16] also cited by the Eichholz firm and the Weinstock firm, requires the enforcement of a fee-splitting provision so as to permit a discharged lawyer to collect a portion of a contingent fee. Although we held in *Camp* that summary judgment was not appropriate on a claim for breach of a joint venture agreement between two lawyers because a jury question existed concerning a breach by one of the lawyers of a duty of good faith within the agreement, we did not specifically analyze the enforceability of a fee-splitting term within that agreement, nor did we specifically hold that a discharged lawyer in that case could recover a portion of a contingent fee under that agreement.[17]

The record reveals no dispute that the Estate clients and the OSP clients terminated the Eichholz firm's representation of them before the occurrence of the contingencies upon which attorney fees would have been earned in their cases. Although, as to most of the clients, Mark Tate's affidavit and deposition testimony was the sole evidence regarding the fact and timing of the clients' termination of the Eichholz firm, that testimony was sufficient to pierce the pleadings, and the Eichholz firm and the Weinstock firm did not point to any specific evidence giving rise to a triable issue on these points.[18]

The Eichholz firm and the Weinstock firm seek to enforce the fee-splitting agreements in a manner that would contravene public policy, by allowing the Eichholz firm to receive a portion of legal fees even though its clients terminated the Eichholz firm's representation before any contingency giving rise to the fees occurred.[19] As a

---

[14] 262 Ga. 612 (422 SE2d 859) (1992).

[15] Id. at 612-613.

[16] 262 Ga. App. 345 (585 SE2d 704) (2003).

[17] Id. at 349-352 (2).

[18] See generally *Cowart*, supra (a defendant moving for summary judgment satisfies his burden of showing that there is no genuine issue of material fact by, inter alia, presenting evidence negating an essential element of the plaintiff's claims); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[19] See Georgia Rules of Professional Conduct, Bar Rule 4-102 (d), Rule 1.5 (e) (2); *Kirschner & Venker, P.C.*, supra at 514; *Brandon*, supra. See generally *AFLAC v. Williams*, 264 Ga. 351, 353 (1) (444 SE2d 314) (1994) (discussing principles of public policy implicated in client's right to terminate lawyer's representation).

matter of law, the fee-splitting provisions cannot be enforced in this manner;[20] however, the Eichholz firm may seek to recover in quantum meruit for services it provided to the Tate firm pursuant to their joint venture.[21] The trial court did not err in granting partial summary judgment to Mark Tate and the Tate firm and denying partial summary judgment to the Eichholz firm and the Weinstock firm on this issue.

2. The Eichholz firm and the Weinstock firm contend that the trial court erred in finding unenforceable the Assignment to the Weinstock firm of the Eichholz firm's interest in attorney fees. The trial court determined that the Georgia Rules of Professional Conduct prohibited the Weinstock firm from receiving, through assignment, the Eichholz firm's claimed 50 percent interest in attorney fees to be earned on the OSP cases. Because, as explained above, the Eichholz firm had no enforceable interest in attorney fees under the OSP Agreement,[22] the question of the Assignment's enforceability is moot.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JULY 13, 2011 — 

*Weinstock & Scavo, Michael Weinstock, James R. Fletcher II, Langley & Lee, William W. Calhoun, Joseph P. Durham, Jr., Kimberly R. Burroughs, Eric L. Barnum,* for appellants.

*Savage & Turner, Robert B. Turner,* for appellees.

---

[20] See *Kirschner & Venker, P.C.,* supra; *Brandon,* supra; *Nelson & Hill, P. A.,* supra.

[21] See *Kirschner & Venker, P.C.,* supra at 513-514 (lawyer who was fired by client prior to occurrence of contingency, and thus was unable to pursue contingent fee, could recover in quantum meruit from former co-counsel who continued to represent client). Cf. *Greer, Klosik & Daugherty v. Yetman,* 269 Ga. 271, 274 (2) (496 SE2d 693) (1998) (lawyer who was prevented from recovering attorney fee under contingent fee agreement where client prevented contingency from occurring could recover in quantum meruit from client).

[22] See Division 1, supra.