[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 18, 2012
JOHN LEY
CLERK

_____

No. 11-12190

_____

D.C. Docket No. 1:06-cv-01770-CAP


R.D. LEGAL FUNDING PARTNERS, LP,

                                                    Intervernor / Appellant,

versus

MARK E. ROBINSON,

                                                    Intervenor / Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 18, 2012)

Before WILSON and MARTIN, Circuit Judges and VOORHEES,[*] District Judge.

---

[*] Honorable Richard L. Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

VOORHEES, District Judge:

This appeal involves competing claims to legal fees earned in connection with a federal class action settlement in a personal injury mass toxic tort case ("the *McLendon* litigation").[1]

The law firm of Devlin & Robinson, P.C. ("D & R"), was one of three firms designated as counsel for the putative plaintiff class. D & R received court approval for an allocated total award of attorneys' fees in the sum of $465,679.75. Three-fourths of this award, or $354,568.64, has been disbursed to D & R's assignee, Appellant R.D. Legal Funding Partners, L.P. ("R.D. Legal") The right to the remaining one-fourth is the subject of this action.

R.D. Legal, an entity that purchases unpaid legal fees in settled cases at a discount, and Appellee Mark E. Robinson ("Robinson"), a founding partner of D & R no longer with that firm, each claim entitlement to the remaining funds in the amount of $111,111.11. The district court ruled in favor of Robinson, finding that Robinson's interest preceded and was paramount to any interest R.D. Legal might have otherwise had by way of the assignment from D & R.

R.D. Legal contends that the district court erred "as a matter of law" in that

---

[1] *Latrice McLendon, et al. v. Philip Services Corporation (d/b/a Georgia Recovery Systems), et al.* / 1:06CV1770-CAP).

Robinson has no enforceable fee agreement for representation of the plaintiff class, and no enforceable fee-splitting agreement with D & R or other class counsel.  For the reasons set forth herein, we affirm.

I.

In March 2001, Robinson, together with Marvin A. Devlin, Esq. ("Devlin"), formed D & R.[2]  In early to mid-2005, Robinson negotiated a buy-out of his ownership interest in D & R, effective June 1, 2005.[3]  (Robinson Aff. 4)  Robinson agreed to remain involved on certain cases  "so that the client's[sic] best interests were protected and so D & R did not lose the business or the cases." (Robinson Aff. 29 n. 2)

After his separation from D & R, Robinson and his family moved to St. Simons Island, Georgia. (Robinson Aff. 5) On April 26, 2006, Robinson and another lawyer with no relationship to D & R formed  Robinson & Associates, LLC ("R & A") and have practiced together as R & A since that time. (Robinson Aff. 6)

On or about July 14, 2006, Robinson was contacted by Scott M. Zahler,

---

[2] Robinson and Devlin had worked together previously at the law firm of Long, Weinberg, Ansley & Wheeler, LLP, located in Atlanta. (Document #169-1 / Robinson Aff. / Exh. 1)

[3] Of the initial 5000 D & R shares, Devlin held 2550 and Robinson held the remaining 2450.  (Robinson Aff. 3)

Esq. ("Zahler") at his R & A office. (Robinson Aff. 7) Zahler, lead counsel for plaintiffs in the *McLendon* litigation, sought to associate Robinson on the *McLendon* matter. (Robinson Aff. 7; Zahler Aff. 2,4) Zahler and Robinson had a "long-term professional association / referral relationship with each other" that predated Robinson's work at D & R. (Robinson Aff. 8; Zahler Aff. 3)

During their initial conversation on July 14, 2006, Zahler advised Robinson that he had been contacted by Latrice McLendon ("McLendon"), a former client of his, who was "seeking representation for injuries she and others had sustained as a result of toxic chemical discharges from a local waste water treatment facility in June of 2006." (Zahler Aff. 5) Zahler advised that he had met personally with McLendon and entered into attorney-client contingent fee agreements with McLendon and several others to represent them in connection with the June 2006 toxic discharge incident. (Zahler Aff. 6; Robinson Aff. 7,12) Zahler told Robinson that he intended to pursue the matter as a class action, that he was assembling a team of lawyers to assist, and that he wanted to associate Robinson *on behalf of the plaintiffs* in exchange for a one-third portion of any contingent fee earned.[4] (Zahler Aff. 7; Robinson Aff. 13) As proposed by Zahler, "Robinson

---

[4] "[Zahler] was the only attorney to directly enter into any fee agreement with McLendon and the other named plaintiffs in this matter. All other attorneys that became involved in the case on behalf of the plaintiffs did so through [Zahler] via an association relationship on behalf of the plaintiffs, either directly through [Zahler], or, in D & R's case, indirectly through

4

was to be jointly responsible for representation of McLendon and the others, was to be responsible for one-third of all expenses incurred in said representation, and was to receive a one-third portion of any contingent fee to be earned in the matter." (Zahler Aff. 8)  Robinson agreed to the proposed association and fee-sharing arrangement.  (Robinson Aff. 14)

The following day, Robinson traveled to Atlanta to meet with Zahler over the weekend and to review information and materials accumulated by Zahler. (Zahler Aff. 9)  Robinson was asked to review, analyze, and strategize with Zahler on the drafting of the initial class action complaint.  (Zahler Aff. 9)

On July 17, 2006, the *McLendon* lawsuit was filed in Fulton County Superior Court, State of Georgia, and was subsequently removed to the United States District Court, Northern District of Georgia, Atlanta Division.   (Zahler Aff. 10).

After filing suit on July 17, 2006, Robinson accompanied Zahler to Fairburn, Georgia, to a Town Hall meeting where Zahler spoke. (Zahler Aff. 12) The Town Hall meeting was scheduled to permit residents of affected communities to be informed by a company representative and various governmental agencies about the June 2006 toxic discharge incident.   (Zahler Aff.

Robinson." (Zahler Aff. 22)

5

10, 11)

Following the Town Hall meeting, "Robinson and [Zahler] were both approached by numerous persons that had been exposed to and affected by the toxic discharges and both of [them] spoke individually with at least 20-30 different people." (Zahler Aff. 12-13; Robinson Aff. 13) In the next two weeks, Robinson and Zahler "continued working on the *McLendon* matter" by gathering additional information, discussing the need for additional co-counsel, and also the Notice of Removal Defendants filed July 28, 2006. (Zahler Aff. 14; Robinson Aff. 20)

Soon after, Robinson told Zahler that "he felt he needed to personally enlist additional support and resources for his one-third interest and role in the case." (Zahler Aff. 15) Robinson spoke about the possibility of associating D & R to assist with Robinson's portion of the case, sharing his belief that Devlin & D & R "were in a position to provide additional resources, manpower and experience Robinson felt was necessary to support his one-third role and interest in the *McLendon* lawsuit." (Zahler Aff. 16, 17)

Zahler agreed to Robinson's proposed association of D & R to assist with Robinson's responsibilities in the case. (Zahler Aff. 18) The arrangement called for Robinson to share his one-third portion of any contingent fee earned with D &

R on a 25%–75% basis, *i.e.*, Robinson was to receive 25% and D & R was to receive 75% of the one-third. (Zahler Aff. 18, 21) Absent Zahler's association of Robinson, and Robinson's later request to associate D & R, "D & R would never have been involved in the case and would not have earned anything from the *McLendon* lawsuit." (Zahler Aff. 20; Robinson Aff. 35, 36,41; Devlin Aff. 6)

Robinson spoke with Mr. Devlin early in August 2006 about the *McLendon* litigation. (Robinson Aff. 25; Devlin Aff. 2) On behalf of D & R, Devlin "agreed to a fee-sharing arrangement whereby [Robinson] would keep twenty-five percent (25%) of [his] one-third of any contingent fee to be earned in the *McLendon* lawsuit and D & R was assigned the remaining seventy-five percent (75%)." (Robinson Aff. 25; Devlin Aff. 3) Robinson never "consented to an assignment of, assigned or otherwise sold or transferred to D & R, R.D. Legal or anyone else, my interest in my twenty-five (25%) of the one-third portion of the total amount of attorneys' fees awarded in the McLendon lawsuit." (Robinson Aff. 42)

On September 20, 2006, D & R, including Devlin and Jacob S. Eby, gave notice of its involvement as attorneys on the case for class plaintiffs. (Document #17) Although Robinson never filed an individual Notice of Appearance, Robinson was actively involved in the legal work on the case through the

successful conclusion of the *McLendon* lawsuit.[5]  (Robinson Aff. 26) Robinson remained engaged with Zahler through "numerous communications and meetings." (Zahler Aff. 19)  Robinson reviewed motions, briefs and other written materials, and assisted with strategy "on most all aspects of the case." (Zahler Aff. 19)

The *McLendon* case was mediated on September 19, 2007, with Robinson playing a key role in achieving the favorable outcome.[6]  (Robinson Aff. 26)

On October 1, 2007, without disclosing this arrangement to Robinson, D & R entered into a Master Assignment and Sale Agreement ("Master Assignment")[7] with R.D. Legal.  (Dersovitz Decl.  2, 3  / Exh. A;  Robinson Aff. 27; Devlin Aff.

[5] Despite not filing a Notice of Appearance, a decision that was tactical in part, Robinson's role as one of several plaintiffs' counsel was transparent to the parties and other counsel working the case.  In any event, the absence of formal Notice of Appearance is not a sufficient basis to disregard an attorney-client relationship.  See, e.g., Kilgore v. Sheetz, 603 S.E.2d 24, 29–30 (Ga. Ct. App. 2004) (attorney does not have to appear on pleadings in order to have an attorney-client relationship and enforceable fee-sharing agreement; applying fee award 50–50% where only one counsel was 'of record').

[6] The record does not establish precisely when the parties reached an agreement in principle.  It indicates there may have been multiple mediation sessions.

[7] The Master Assignment was comprised of three separate assignments occurring on October 1, 2007, December 19, 2007, and March 17, 2008, and represented a purchase of D & R's legal fees by R.D. Legal in the total principal amount of $444,443,43. (Dersovitz Decl. 6) Each assignment was supported by individual schedules reflecting the specific unpaid fees being assigned by D & R, including the *McLendon* fees without adjustment for or disclosure of Robinson's interest, and  corresponding documents including a Limited Irrevocable Power of Attorney for each assignment that granted R.D. Legal the ability "[t]o endorse and deposit any and all settlement checks payable to Assignee [R.D. Legal]."  (Dersovitz Decl. Exhs. B-1 thru B-3)

4, 5)  D & R, through its  shareholders, Devlin and Earnest Redwine, Jr., granted

R.D. Legal a security interest in and pledge of all of D & R's "present and future

assets and properties, including without limitation, all accounts, chattel paper,

equipment, instruments, investment property, documents, letters of credit rights,

personal property and general intangibles" (collectively, the "Collateral").

(Dersovitz Decl. 4,14 / Exh. A, 5 at 7.)  Under the terms of the Master

Assignment, once payment of attorneys' fees became due, payment was to be

made directly to R.D. Legal rather than D & R.  (Dersovitz Decl. 2)

As a part of the Master Assignment, D & R sold and assigned D & R's

interest in the *McLendon* attorneys' fees.  (Dersovitz Decl. 5)  Because Robinson

never assigned his interest to D & R, D & R could only convey to R.D. Legal its

75% of the one-third of the *McLendon* fees.  This is consistent with Devlin's

sworn affidavit which avers that D & R only sought to sell *D & R's portion* of its

contingent interest in the attorneys' fees to be earned in *McLendon*.  (Devlin Aff.

4,5) D & R also assigned any "amounts owing for disbursements" connected to the

*McLendon* litigation.[8]  (Dersovitz Decl. 7)   D & R did not make Robinson aware

of the assignment to R.D. Legal. (Devlin Aff. 5) Similarly, D & R failed to make

---

[8] In addition to attorneys' fees earned, D & R was due to receive reimbursement of
$21,235.12 from the *McLendon* settlement proceeds for costs incurred during the litigation.

9

R.D. Legal aware of Robinson's 25% interest in the one-third of the *McLendon* attorneys' fees.

On July 23, 2008, two years after commencement of the *McLendon* class action (subsequent to mediation, but prior to Final Approval of the Class Action Settlement), D & R filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the Northern District of Georgia.[9] (In re Devlin & Robinson, P.C., No. 08-73871.) D & R did not identify R.D. Legal as a potential creditor in bankruptcy, nor did it disclose the D & R Master Assignment. (Robinson Aff. 28) Likewise, D & R did not list its contingent interest in the *McLendon* lawsuit as property of the bankruptcy estate. (Robinson Aff. 28)

A Motion for Preliminary Approval of the Class Action Settlement was filed before the district court on August 13, 2008. (Robinson Aff. 31) An Order granting Preliminary Approval was issued September 15, 2008. (Robinson Aff. 31)

On February 3, 2009, Robinson filed a Proof of Claim in the D & R Bankruptcy proceeding to protect his interest in matters unrelated to the

_____

[9] The proceedings were converted from Chapter 11 to Chapter 7 on March 18, 2010.

*McLendon* litigation.[10] (Robinson Aff. 29) R.D. Legal had "no official notice of the commencement of D & R's Chapter 11 bankruptcy case" and did not file a proof of claim in the Chapter 11 proceedings. (Dersovitz Decl. 19, 20)

A Motion for Final Approval of the Class Action Settlement was filed May 20, 2009, in addition to a Motion for Attorneys' Fees and Expenses of Class Counsel. (Robinson Aff. 32) On June 2, 2009, the *McLendon* Final Approval of the Class Action Settlement was entered by the Court.

In July 2009, Robinson became aware of the D & R Master Assignment to R.D. Legal. (Robinson Aff. 30) He later learned that R.D. Legal asserted ownership in the entire one-third of the *McLendon* attorneys' fees awarded to D & R. (Robinson Aff. 37) Consequently, on July 19, 2009, Robinson filed a Notice of Attorneys' Fee Lien, Motion to Intervene, and Response in Opposition to R.D. Legal's Motion for Disbursement of Funds. (Robinson Aff. 37)

---

[10] Robinson's Proof of Claim asserted an unsecured interest in the following: 1) the remaining, unpaid portion of D & R's repurchase of his D & R shares; 2) the remaining, unpaid portion of hourly attorneys' fees due as a result of hourly work performed on hourly case files billed through D & R "for administrative convenience and client retention / case transition purposes only"; and 3) the remaining, unpaid portion of a large loan made to D & R in order for D & R to pay off a balance on D & R's corporate American Express credit card for which the credit card company was holding Robinson personally responsible because he initially opened the account in 2001 for D & R. (Robinson Aff. 29 / Exh. 2) According to Robinson, he did not include any claim regarding his 25% of the one-third interest in the *McLendon* lawsuit because "that interest belonged to [Robinson], was [Robinson's] property, was not part of the bankruptcy estate, and thus was not subject to the Bankruptcy Court's jurisdiction." (Robinson Aff. 29 n.1)

On August 7, 2009, the district court permitted both R.D. Legal and Robinson to intervene in the class action. On the same date, the district court referred to the bankruptcy court the question whether attorneys' fees and costs allocated to D & R constituted property of the bankruptcy estate.

On August 10, 2009, an adversary proceeding seeking declaratory judgment as to ownership interest in the attorneys' fees was initiated by R.D. Legal against D & R and Robinson, individually. (AP No. 09-06445) R.D. Legal contended that D & R assigned its interest in the full one-third attorneys' fees award ($465,679.75) to R.D. Legal on October 1, 2007. Pursuant to a Consent Order issued October 5, 2009, R.D. Legal obtained $354,568.64 as Robinson's claim was only for $111,111.11, or 25% of the D & R fee. Cross-motions for summary judgment were filed in the bankruptcy court as to entitlement to the remaining $111,111.11. The bankruptcy trustee concluded that this money was not part of the bankruptcy estate.

On August 13, 2010, the district court withdrew the bankruptcy court reference to determine the respective interests of R.D. Legal and Robinson in the remainder of the attorneys' fees. The district judge heard oral argument on February 25, 2011. On May 11, 2011, the district court issued a written decision awarding the remainder of the funds to Robinson. The district court found:

12

> "Robinson was hired to represent the plaintiffs and did provide legal services to them. Robinson's interest in his portion of the total attorneys' fees awarded existed prior to any claim asserted by R.D. Legal Funding and could not have been assigned by Devlin & Robinson, as it belonged to Robinson personally."

(Appellant's Record Excerpts, 177 at 4.) The $111,111.11, plus interest, was ordered to be disbursed by the Clerk to Robinson.

## II.

We review the district court's factual findings for clear error, "a highly deferential standard of review," and conclusions of law de novo. Renteria-Marin v. Ag-Mart Produce, Inc., 537 F.3d 1321, 1324 (11th Cir. 2008) (bench trial) (internal citations omitted); Brandon v. Newman, 532 S.E.2d 743, 746 (Ga. Ct. App. 2000) (whether retainer agreement is contrary to public policy is a question of law; errors of law are "freely reviewable"); see also D. Robert Autrey, Jr., P.C. v. Baker, 536 S.E.2d 204, 204 (Ga. Ct. App. 2000) (considering applicability of Georgia's attorney-lien statute; "trial court's determination of facts when acting as factfinder must be affirmed if there is any evidence to support them.") (internal citations omitted).

## III.

R.D. Legal asserts (1) that Robinson has no enforceable contractual interest in the $111,111.11 because the underlying contingency fee and fee sharing

13

agreements asserted by Robinson violate Georgia public policy; (2) that no statutory attorney lien exists in favor of Robinson pursuant to O.C.G.A. § 15-19-14; (3) that any interest Robinson may have had in the *McLendon* attorney fee was extinguished by the district court's Final Approval of the Class Action Settlement and authorization of payment to class counsel per the terms of the settlement; (4) that Robinson's only possible avenue for relief is against D & R based upon a *quantum meruit* theory; and (5) that Robinson's instant claim is barred by the doctrine of judicial estoppel. In light of our holding that Robinson had an enforceable contractual interest in the $111,111.11, as well as the protection of Georgia Code Section 15-19-14, we do not reach all of R.D. Legal's arguments.[11]

Robinson has a valid and enforceable contractual right in the remaining attorneys' fee award. "It is the paramount public policy of th[e] [S]tate [of Georgia] that courts will not lightly interfere with the freedom of parties to contract." Coleman v. B-H Transfer Co., 669 S.E.2d 141, 144 (Ga. 2008). Under Georgia law,

> [P]arties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to public

---

[11] To the extent R.D. Legal claims that the affidavits submitted with respect to these issues by Robinson, Devlin, and Zahler are not proper evidence because they were not provided to the district court contemporaneously with class counsel's Motion for Attorneys' Fees and Expenses for Class Counsel, we simply note that the contest over the $111,111.11 between R.D. Legal and Robinson was not before the district court at that time.

interest clearly appears. This ancient rule is applicable to all the private relations in which persons may place themselves towards each other.

And a contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.

Brandon, 532 S.E.2d at 746 (internal citations omitted).[12] "[C]ourts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt." Emory Univ. v. Porubiansky, 282 S.E.2d 903, 904–05 (1981) (internal citation and quotation marks omitted).

As for contracts entered into by members of the Georgia State Bar, public policy may be gleaned from the Georgia Disciplinary Standards and the Georgia Rules of Professional Conduct ("the Rules"). See generally, Eichholz Law Firm, P.C. v. Tate Law Group, LLC, 714 S.E.2d 413, 415–16 n. 10 (Ga. Ct. App. 2011)

---

[12] Pursuant to Georgia law: "[c]ontracts deemed contrary to public policy include but are not limited to:

(1) Contracts tending to corrupt legislation or the judiciary;
(2) Contracts in general restraint of trade, as distinguished from contracts which restrict certain competitive activities . . . ;
(3) Contracts to evade or oppose the revenue laws of another country;
(4) Wagering contracts; or
(5) Contracts of maintenance or champerty.

O.C.G.A. § 13-8-2(a) (2011). Certain indemnification agreements are also declared by statute to violate public policy. O.C.G.A. § 13-8-2(b).

15

(citing Nelson & Hill, P.A. v. Wood, 537 S.E.2d 670 (Ga. Ct. App. 2000) for the proposition that State Bar disciplinary standards can be relied upon by courts). However, "[t]he fact that this case involves an attorney-client relationship does not mean that the rules of professional conduct preempt statutory law and case law regarding contracts." William J. Cooney, P.C. v. Rowland, 524 S.E.2d 730, 733 (Ga. Ct. App. 1999) (notwithstanding attorney being bound to abide by standards of professional conduct, "cases involving attorney-client relationships are [] often decided based solely upon the terms of the contract, applicable statutes and appellate court decisions, without reference to the rules or standards of the State Bar of Georgia.") (internal citations omitted); Cleveland Campers, Inc. v. R. Thad McCormack, P.C., 635 S.E.2d 274, 276 (Ga. Ct. App. 2006) (attorney-client relationship is generally a matter of express contract).

The existence of an attorney-client relationship "is sufficiently established when it is shown that the advice or assistance of the attorney is sought and received in matters pertinent to his profession." Cleveland Campers, Inc., 635 S.E.2d at 276 (internal citations omitted); see also Legacy Homes, Inc. v. Cole, 421 S.E.2d 127, 128 (Ga. Ct. App. 1992). In the instant case, the district court correctly found facts establishing the existence of an attorney-client relationship between Robinson and the *McLendon* plaintiff class. The undisputed evidence

16

reveals that Robinson, having already sold his shares in D & R and begun a new firm, entered into an attorney-client relationship with the *McLendon* plaintiffs at the outset of the litigation. Robinson's services were secured by way of a joint-representation agreement with class plaintiffs' lead counsel Scott Zahler. Zahler establishes the association of Robinson and the rationale behind his decision to bring Robinson on board immediately before the filing of the *McLendon* lawsuit. Zahler also makes it abundantly clear that Robinson's legal advice and assistance was sought and, in fact, received immediately upon the association. See Legacy Homes, 421 S.E.2d at 128. Robinson played a key role in achieving a favorable settlement for the class and continued to assist class counsel throughout the pendency of the litigation. These underlying factual findings are not clearly erroneous.

IV.

For the foregoing reasons, the district court's ruling in favor of Appellee Mark E. Robinson is AFFIRMED.