## A01A0148. MAIL ADVERTISING SYSTEMS, INC. v. SHROKA.

(548 SE2d 461)

RUFFIN, Judge.

David Shroka sued Mail Advertising Systems, Inc. ("MAS") for breach of contract. Following a bench trial, the court entered judgment in favor of Shroka. MAS appeals, challenging several of the trial court's findings and its damages calculation. For reasons that follow, we affirm in part and reverse in part.

We review appeals from bench trials, where the trial judge sits as trier of fact and has the opportunity to assess witness credibility, under the clearly erroneous standard.[1] Accordingly, "we will not disturb a trial court's findings of fact if there is any evidence to support them."[2]

The record shows that Shroka signed an employment agreement with MAS on October 10, 1994. Pursuant to that agreement, Shroka became president of the company, reporting directly to principal owner Hugh Pannell. The agreement provided that "[u]nder the guidance and supervision of Hugh Pannell, Shroka will take control of all business activities and personnel decisions." It specified a salary of $5,000 per month, or $2,308 every two weeks, and stated that "[t]his initial contract will run from October 10th, 1994 through January 10th, 1995 at which time a new salary agreement and incentive program will be drafted and agreed on by Hugh Pannell and David Shroka." The agreement also indicated that MAS would pay "basic Medical/Dental insurance" for Shroka and his wife.

Shroka began working for the company on or about October 10, 1994. Although Pannell sometimes criticized Shroka for being too aggressive, Shroka testified that Pannell "was very pleased" with his work. Nevertheless, Pannell fired Shroka on October 21, 1994, just two weeks into his contract, and paid him for only those two weeks. Shroka subsequently sued MAS for breach of contract, seeking three months salary plus reimbursement for dental expenses incurred by Shroka's wife on November 9, 1994.

According to Pannell, Shroka told Pannell on October 20, 1994, that he would be absent from work that day because "he was spending the day with his [stock]broker." During Shroka's absence, Pannell learned that Shroka planned to clean MAS's warehouse, where the company kept materials belonging to customers.[3] This concerned Pannell because some customers paid the company to store their materials. Pannell also received complaints that day from various

---

[1] *Smith v. Direct Media Corp.*, 247 Ga. App. 771-772 (544 SE2d 762) (2001).

[2] Id.

[3] Shroka apparently had asked a number of employees to help him clean the warehouse the following Saturday.

employees, who did not like Shroka's manner and attitude.

The next day, Shroka called MAS and told Pannell that "he was still having so much fun with his stockbroker that he was going to have to spend the day down there." Pannell asked Shroka to come into the office, and Shroka reported to work that afternoon. When Shroka arrived, Pannell fired him. Explaining the termination at trial, Pannell noted that Shroka failed to report to work for two days, upset long-term employees, and did not consult Pannell about all of his activities, including the warehouse cleanup. On cross-examination, Pannell admitted that Shroka was a hard worker, but stated that he found Shroka's personality "a little abrasive."

Shroka testified that he met daily with Pannell, whom he consulted about his activities. He denied that he ignored company rules, such as the no-smoking policy in the building, and stated that he only intended to discard from the warehouse "nonuseable material" that could be disposed of legally. He also testified that his conflicts with employees arose because "people tend to resist change." Shroka denied skipping work to spend time with his stockbroker, claiming that he performed job-related duties while out of the office. According to Shroka, he worked from early in the morning until late at night, did a good job in his new position, and was shocked by his termination.

Following the bench trial, the trial court found that the parties entered into an employment contract for a definite term of three months. It also concluded that MAS was not authorized to terminate the agreement. The trial court awarded Shroka his full salary under the three-month contract (minus the two weeks of pay that he had already received) plus expenses relating to the November 9, 1994 dental work.[4]

1. MAS argues that the trial court erred in finding that Shroka's employment contract extended for a definite term of three months. It asserts that the contract's two-week pay period established an employment term "terminable after two weeks." We disagree.

Under OCGA § 34-7-1,

[i]f a contract of employment provides that wages are payable at a stipulated period, the presumption shall arise that the hiring is for such period, *provided that, if anything else in the contract indicates that the hiring was for a longer*

---

[4] The trial court determined that MAS "was authorized not to pay [Shroka] for the two days [Shroka] was not at his place of employment." Accordingly, it subtracted from the award Shroka's salary for October 20 and 21, 1994, when he did not report for work.

*term, the mere reservation of wages for a lesser time will not control.*[5]

Although Shroka's contract set up a two-week pay period, that provision does not define the employment term here. The contract specifically stated that it "will run from October 10th, 1994 through January 10th, 1995," a three-month period. Since explicit language in the contract extended the employment term for three months, "the mere reservation of wages [for a two-week time period] will not control."[6]

On appeal, MAS relies heavily on *Burton v. John Thurmond Constr. Co.*[7] In *Burton*, the disputed employment contract set the employee's salary at "$2,000.00 per month for the first six (6) months. At that time salary is to be increased to $3,000.00 per month for the next six months, at which time [the contracting parties] will re-evaluate and make new decision [sic] regarding salary."[8] The employee was terminated within the first six months and sued, claiming that the contract defined an employment term of not less than one year. We agreed with the trial court that nothing in the contract rebutted the statutory presumption that the contract's pay schedule established a one-month term of employment, after which the employment became terminable at will.[9] We specifically noted that the contract "contained no provision setting forth a definite term of employment."[10]

*Burton* is clearly distinguishable from this case. The agreement between Shroka and MAS provided for a definite three-month term of employment running from October 10, 1994, through January 10, 1995. The trial court did not err.[11]

2. MAS also challenges the trial court's factual finding that the company lacked cause to terminate Shroka. We find no error.

Shroka's employment contract contained no language governing termination. Like any contract, however, it "imposed upon each party a duty of good faith and fair dealing in the performance and completion of their respective duties and obligations."[12] The trial court determined that the true reason behind Shroka's dismissal was his failure to report to work for two days. It further concluded that this absence "did not constitute an abandonment and breach of the contract [by Shroka] and did not authorize [MAS] to terminate

---

[5] (Emphasis supplied.)
[6] OCGA § 34-7-1.
[7] 201 Ga. App. 10 (410 SE2d 137) (1991).
[8] Id.
[9] Id. at 11; see also OCGA § 34-7-1 (statutory presumption).
[10] Id.
[11] See *Wojcik v. Lewis*, 204 Ga. App. 301, 303 (1) (419 SE2d 135) (1992).
[12] *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 543 (4) (466 SE2d 27) (1995).

[Shroka's] employment."

MAS argues that the trial court ignored the other grounds given by Pannell for Shroka's termination, such as the alleged conflict between Shroka and the company's long-time employees. The record belies this argument. Following the bench trial, the trial judge asked the parties to brief whether Shroka's absence from work "and or other items and changes [in] policy . . . [are] such conditions that allow termination for cause." The trial court recognized the possibility that some other grounds factored into the decision. After reviewing the evidence and the parties' briefs, it apparently determined that Shroka's mere absence resulted in his dismissal.

The trial court was authorized, as factfinder, to disbelieve Pannell's testimony about other grounds for the termination. The evidence showed that Pannell fired Shroka on October 21, 1994, immediately following the two-day absence. When Pannell explained at trial his reasons for the termination, he first noted Shroka's absence. He mentioned the other possible problems, such as the conflicts with employees and the warehouse cleanup, only after stating that Shroka was absent from work. It also appears that Pannell first learned about these other alleged problems on October 20, 1994, and did not question Shroka about them before firing him the next day. The trial court could have reasonably determined that Pannell based his decision on Shroka's failure to report to work, rather than these unilateral allegations.

The evidence also supports the trial court's conclusion that Shroka's two-day absence did not authorize MAS to terminate the contract. In this case,

> [a]mple testimony allowed the [trial court] to determine that [Shroka] did not defectively or deficiently perform his employment duties or obligations, so as to be entitled to lost wages for the remaining period of the term. As to contrary evidence, it is the duty of the [factfinder] to determine the credibility of witnesses and resolve conflicting testimony.[13]

Accordingly, this enumeration of error has no merit.

3. Finally, MAS argues that the trial court erroneously included in the damages award dental expenses incurred by Shroka's wife on November 9, 1994. We agree.

The employment contract obligated MAS to pay "basic Medical/ Dental insurance for David Shroka and his wife." The company did not promise to reimburse Shroka for these expenses directly; it merely pledged to pay for insurance. At the bench trial, Shroka sub-

---

[13] Id.

mitted into evidence the bill relating to his wife's dental work. He also testified that the dental work stemmed from a preexisting condition for which his wife sought treatment before he signed the employment contract with MAS. He presented no evidence about the type of dental insurance offered by the company, the amount and extent of coverage, or whether such insurance would cover a preexisting condition.

In contract disputes, the plaintiff must provide evidence that "will furnish [the factfinder] data sufficient to enable [it] to estimate with reasonable certainty the amount of the damages. It cannot be left to speculation, conjecture and guesswork."[14] In this case, the trial court ordered MAS to reimburse Shroka for the entire dental bill. Nothing in the record, however, shows whether the dental work would have been covered by insurance or the extent of any coverage. Without some competent evidence about the company's dental insurance, the award for dental expenses was mere guesswork.

The trial court erred in including the dental expenses in the damages award.[15] Accordingly, this case is remanded to the trial court with direction that the award of damages be reduced by $567, the amount of the November 9, 1994 dental bill.

*Judgment affirmed in part and reversed in part and case remanded with direction. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 4, 2001.

*William T. Cox, Jr.,* for appellant.
*H. Darrell Greene,* for appellee.

---

[14] (Citations and punctuation omitted.) *Ga. Power Co. v. Maxwell,* 169 Ga. App. 324, 327 (3) (312 SE2d 645) (1983); see also *Dobbs v. Titan Properties,* 178 Ga. App. 389, 391-392 (3) (343 SE2d 419) (1986).

[15] See *Maxwell,* supra.