## A03A2361. HAYES v. ALEXANDER.
### (592 SE2d 465)

BLACKBURN, Presiding Judge.

Following a bench trial, Warner L. Hayes appeals the trial court's ruling for Annette Alexander in this breach of contract, fraud, and Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act action, contending that there was no meeting of the minds as to his agreement to pay Alexander, and that he had no obligation to pay the subject promissory note. Alexander sued Hayes for breach of contract, fraud, and violating the RICO Act.[1]

In this appeal, Hayes contends that he had no obligation to pay the promissory note because: (1) it lacked consideration, (2) he was not the real party in interest, and (3) the contract was unenforceable because there was no meeting of the minds. Hayes enumerates as error the trial court's finding of the existence of a novation because there was no prior obligation upon which to create a new agreement. For the reasons set forth below, we affirm.

In a bench trial, the trial court's findings will be upheld on appeal when there is any evidence to support them. *CRS Sirrine v.*

---

[1] OCGA § 16-14-1 et seq.

*Dravo Corp.*[2] Findings of fact made by the trial court in a nonjury trial may not be set aside unless they are clearly erroneous. *Sadler v. First Nat. Bank &c.*[3] Viewing the evidence in this light, it shows that Annette Alexander and her husband, Douglas Alexander, invested $85,000 in two ventures promoted by Hayes. Alexander testified that after she won $100,000 in the lottery, Hayes convinced her husband to invest $15,000 in the Cajun Food Wagon which shortly thereafter "went bust."

Despite losing that amount, the Alexanders "trusted him because he was our neighbor [and] because he did our taxes." At Hayes's behest, the Alexanders became partners with him in the Creekview Package Store, a liquor store. Relying upon Hayes's advice and representations, the Alexanders wrote three checks made payable directly to Hayes for $40,000, $24,000, and $6,000. As Alexander, a high school English teacher, recalled, "we didn't have a reason . . . to know he was trying to get our money, trying to swindle us." Alexander summed up that investment as "[i]t was a bust too. We never received anything."

It is undisputed that Hayes never provided an accounting to the Alexanders for the money they invested in the liquor store. About a year after her husband's death in July 1997, Alexander confronted Hayes. In essence, she told Hayes that he had had their money for a year and "we've not received one penny." She accused Hayes of deception and misrepresenting the value of the business, saying, "I really think you swindled us. I think you just tried to get the money. I think that you never had any intention of us ever getting anything from this package store." In addition, she blamed Hayes for the Alexanders' tax deficiency that required them to pay $24,657.65 in additional taxes.

In response to her accusations and her demand for a full refund, Hayes refused to return the $85,000, but he did offer to return $50,000. Alexander testified that when Hayes said, "I'll give you back $50,000," she had immediately typed up a single page that reflects "[h]is terms, his agreement, his words are on that document." This "Statement of Agreement" entered into between Alexander and Hayes signed and dated June 10, 1998, provides in part: "I, Warner L. Hayes, agree to pay Annette D. Alexander, fifty thousand dollars ($50,000.00)." Under the express terms of this agreement, Hayes obligated himself to pay a minimum of $500 per month to Alexander and a total of $50,000 "before, or within a five year period of date of agreement."

---

[2] *CRS Sirrine v. Dravo Corp.*, 219 Ga. App. 301, 302 (1) (464 SE2d 897) (1995).
[3] *Sadler v. First Nat. Bank &c.*, 267 Ga. 122, 123 (2) (475 SE2d 643) (1996).

Between October 1998 through September 2001, Hayes made twenty-six monthly payments of $500 each and two payments of $1,000. On one occasion, Alexander accepted tax services from Hayes valued at $420 in lieu of the monthly payment. When Hayes failed to fulfill the terms of their agreement, Alexander sued for the balance remaining. She alleged that Hayes had intentionally misrepresented the financial condition of Creekview to fraudulently induce her and her husband to invest their money in that business.

At trial, Alexander testified that she told Hayes that she wanted the money back because he had misrepresented the liquor store as being a "great investment" that would make "lots of money." When she confronted him, according to Alexander, she told him, "I feel that you swindled us. I feel that you tricked us." She also testified that Hayes had "presented himself as a tax attorney."

Hayes, who has a law degree and a master's degree in law, but is not a practicing attorney, operates a tax preparation service. Notwithstanding his knowledge of accountancy and tax law, Hayes never provided the Alexanders with an accounting of their money or showed them the books for the liquor store. Hayes claimed that the Alexanders' money went into the business checking account for Creekview and also testified that "[t]hey bought [Jerry Wilson's] half interest."

On cross-examination, Hayes admitted attempting a fraudulent transfer in his bankruptcy case and practicing law in Georgia in the mid-1970s despite never passing the state bar examination. When pointedly asked whether he recalled during the bankruptcy hearing that the judge said, "[t]his is fraudulent and I'm not going to let you get away with it," Hayes responded, "I remember him saying that."

Other evidence showed that near the time that Hayes obtained the Alexanders' money in 1997, Hayes purchased Breezes Eastside Café for $180,000 or $190,000. Although Hayes testified that the money to buy Breezes "came from my wife's 401K Plan," he admitted that he had no documentation to prove that his wife had supplied any money toward that purchase. By Hayes's account, he made the payments to Alexander because he felt sorry for her and "I felt bad, and I wanted to help her as much as I could help her."

In a bench trial, the trial court determines the credibility of witnesses and may accept or reject any part of a witness's testimony, even in the absence of contradictory testimony. See *Anderson v. State*.[4] Here, in awarding judgment to Alexander, the trial court rejected key portions of Hayes's testimony. Specifically, the court found "it is unlikely the Defendant, armed with a law degree, would

---

[4] *Anderson v. State*, 267 Ga. 116, 118-119 (475 SE2d 629) (1996).

enter into the formality of a promissory note with a definite amount of payment of $50,000 and substantially [follow] a payment schedule for almost three years because he felt sorry for the Plaintiff."

The trial court also found "it difficult to believe" Hayes's testimony that he had accepted the $70,000 from the Alexanders on behalf of someone else but had no documentation to show that he had done so. Determining that the parties had a dispute and reached a settlement of that dispute by a compromise under which Hayes agreed to pay $50,000 to Alexander over a five-year term, the trial court found all the essential elements of accord and satisfaction. The court awarded judgment to Alexander for $34,580 plus court costs.

1. Hayes contends that there was no consideration for the promissory note and that he has no obligation to pay the note because he was not the real party in interest.

The agreement did not lack consideration. Any benefit accruing to the one who makes the promise, or any loss, trouble, or disadvantage undergone by, or charge imposed upon, the one to whom the promise is made, is sufficient consideration. *Pepsi Cola Bottling Co. &c. v. First Nat. Bank &c.*[5] When Alexander demanded a full refund, Hayes offered to pay $50,000 over a five-year term and Alexander agreed to settle for that amount.

By signing the document, Hayes benefitted by not having to account for the apparent disappearance of the Alexanders' money and by not having to provide a full refund. And, Alexander, in effect, agreed to forgo any claims that she otherwise had for fraud, misrepresentation, or for the entire $85,000. Thus, the agreement was supported by consideration. See *Pepsi Cola Bottling*, supra.

As to Hayes's assertion that he was not the real party in interest, the trial court obviously did not accept Hayes's testimony that the Alexanders' money "went to [my] partner, Jerry Wilson, who had the other interest in the business." Wilson did not testify and the record contains not a shred of documentation to show that Wilson received a nickel of the Alexanders' money.

2. Hayes contends that the agreement was unenforceable because there was no meeting of the minds. He claims that he made the payments because he felt sorry for Alexander, not because he had a legal obligation to do so.

The dispositive question is whether the parties entered a valid and enforceable agreement. We find that they did just that. To create a binding contract, OCGA § 13-3-1 requires: parties able to contract, consideration moving to the contract, the assent of the parties to the

---

[5] *Pepsi Cola Bottling Co. &c. v. First Nat. Bank &c.*, 248 Ga. 114, 116 (2) (281 SE2d 579) (1981).

terms of the contract, and a subject matter upon which the contract can operate.

Here, it is undisputed that Hayes and Alexander were parties able to contract, both signed the document, and the agreement was sufficiently definite to enable the ascertainment of the terms and conditions under which the parties intended to be bound. See *Sheppard v. Sheppard*.[6] Further, "where parties reduce their agreement to writing, all oral negotiations antecedent thereto or contemporaneous therewith are merged into, terminated, and extinguished by the writing, and parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." *Parker v. Cook*.[7] The promissory note at issue is not ambiguous, and Hayes's representations regarding his intent when he signed the contract are inadmissible to vary the terms. See *Long v. Beach*.[8] "In the absence of fraud, accident or mistake an unconditional promissory note cannot be changed into a conditional obligation by parol evidence." *Dolanson Co. v. C & S Nat. Bank*.[9] Here, no such showing was made.

3. Hayes contends that the trial court erred in finding there was an accord and satisfaction because a prior obligation did not exist. He claims that "there was no previous valid obligation" upon which an accord and satisfaction could operate.

"Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed." (Punctuation omitted.) *Nebraska Plastics v. Harris*.[10] Whether an accord and satisfaction exists is generally a question for the factfinder. Id. Contrary to Hayes's contentions, the trial court properly determined that a valid dispute existed, as Alexander had asserted a claim for $85,000 based on the original agreement and that Hayes had compromised the dispute by agreeing to pay $50,000 as reflected in the note. The trial court correctly held that the essential elements of an accord and satisfaction had been satisfied. The trial court further held that Hayes was entitled to a credit of $15,420 and awarded Alexander the principal amount of $34,580 and court costs of $49. We cannot say that the trial court's findings were clearly erroneous, and thus we affirm.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

---

[6] *Sheppard v. Sheppard*, 229 Ga. App. 494-495 (1) (b) (494 SE2d 240) (1997).
[7] *Parker v. Cook*, 248 Ga. App. 621, 622 (548 SE2d 387) (2001).
[8] *Long v. Beach*, 242 Ga. App. 448, 449 (529 SE2d 901) (2000).
[9] *Dolanson Co. v. C & S Nat. Bank*, 242 Ga. 681, 683 (1) (b) (251 SE2d 274) (1978).
[10] *Nebraska Plastics v. Harris*, 236 Ga. App. 499, 502 (512 SE2d 388) (1999).

DECIDED DECEMBER 17, 2003.

*Sampson Oliver, Jr.*, for appellant.
*Joe A. Weeks, Constance P. Heard*, for appellee.