**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 2, 2016**

# In the Court of Appeals of Georgia

A16A0282. SIMS v. NATURAL PRODUCTS OF GEORGIA, LLC   PE-011
     et al.

PETERSON, Judge.

James Sims sued Richard Creasman, Robert Wilkinson, and Natural Products of Georgia, LLC ("Natural Products") for breach of a promissory note, fraud, and violation of the Georgia Securities Act ("GSA"), OCGA § 10-5-50. Following a bench trial, the trial court entered a judgment in favor of Sims on the promissory note and ordered Natural Products to pay the balance owed on the note, and entered judgment for Wilkerson and Creasman on the other claims because their conduct did not rise to the level of fraud and did not violate the GSA. Sims appeals and argues

that the trial court erred in concluding that Creasman did not commit fraud or violate the GSA.[1] Because the evidence supports the trial court's verdict, we affirm.

On appeal from the entry of judgment in a bench trial, we review the trial court's factual findings under the clearly erroneous standard and will not disturb those findings if there is any evidence to support them. *See Mail Advert. Sys., Inc. v. Shroka*, 249 Ga. App. 484, 484 (548 SE2d 461) (2001). Additionally, we view the evidence in the light most favorable to the trial court's verdict. *Cox Interior, Inc. v. Bayland Properties, LLC*, 293 Ga. App. 612, 613 (1) (667 SE2d 452) (2008).

So viewed, the evidence shows that around 2011 or 2012, Creasman and Wilkerson formed Natural Products to produce and sell tomatoes grown year-round inside greenhouses. Creasman and Wilkerson received assistance from the U.S. Small Business Administration and presented their business plan to potential investors. They also engaged in conversations with local representatives of Ingles Markets, Inc. for the purchase of Natural Products' produce.

---

[1]Although Sims also raises claims against Wilkerson on appeal, he conceded below that he was barred from asserting these claims due to Wilkerson's bankruptcy discharge. Therefore, we will consider only those claims against Creasman.

Creasman and Wilkerson subsequently approached Sims about investing in Natural Products and presented him with the company's business plan. Wilkerson and Creasman advised Sims that Natural Products needed a total of $1.5 million to start operations and asked him for $150,000 to help fund the company for a few months until they secured additional investments, which they believed would happen based on conversations with a potential investor in North Carolina. Sims agreed to give $150,000 to Natural Products in exchange for the company's promise to pay him $525,000 in semi-annual installments beginning in February 2013. The parties executed a promissory note in February 2012 to reflect this agreement, and the promissory note also provided that the funds were to be used only for the purpose of constructing greenhouses in Barrow County.

Wilkerson and Creasman, who both signed the promissory note on behalf of Natural Products, deposited the funds into the company's bank account. Soon thereafter, Wilkerson and Creasman issued checks from the bank account to pay themselves $600 each per week and other amounts periodically as salary. Natural Products paid Sims $50,000 in February 2013, but failed to make any other payments and failed to construct any greenhouses with the money Sims provided.

Sims filed this lawsuit, alleging that the defendants defrauded him because they knew they would not use his investment for the building of greenhouses, as they had promised Sims, and that their actions also violated the GSA. At the bench trial, Wilkerson testified that he and Creasman intended to pay Sims all that Sims was owed once they received additional funding to get the business operational. Creasman testified that he had a small operational greenhouse and believed that an investment group would provide sufficient funding to expand the operations. Following the trial, the trial court found in favor of Creasman on the fraud and GSA claims, and entered a default judgment against Natural Products on the promissory note for its failure to file an answer.

1. Sims argues that the trial court erred in finding that Creasman's actions did not rise to the level of fraud because Creasman did not intend to honor the terms of the promissory note at the time he signed it on behalf of Natural Products. In support of his argument, Sims relies on evidence showing that subsequent to the execution of the promissory note, Creasman used the funds from Sims' loan to pay himself a salary.

> In most circumstances, actionable fraud cannot be predicated on a
> promise contained in a contract because the promise is to perform some

act in the future, and normally, fraud cannot be predicated on statements which are in the nature of promises as to future events. However, an exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place. Additionally, if the particular statement at issue in the contract was not a future promise but a present misrepresentation of fact, it is sufficient to support a claim for fraud.

*BTL COM Ltd. v. Vachon*, 278 Ga. App. 256, 258 (628 SE2d 690) (2006) (citations and punctuation omitted). "Fraudulent intent at the time of contracting can [also] be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith." *Id.* at 261 (1) (628 SE2d 690) (2006) (citation omitted). Actionable fraud, however, does not "result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud." *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 558 (d) (644 SE2d 440) (2007) (citation omitted). "[T]he question of intent to deceive or not to perform is in all cases the dominion of the fact finder; on appeal, the presumption lies in favor of the verdict where there is any evidence to support it." *Gunnin v. Dement*, 205 Ga. App. 631, 633 (2) (422 SE2d 893) (1992) (internal punctuation and citations omitted).

5

Viewing the trial evidence in the light most favorable to the trial court's verdict, the evidence supports the trial court's finding that Creasman did not commit fraud. Upon approaching Sims to request funding, Wilkerson and Creasman advised Sims that the $150,000 they sought would fund Natural Products for a few months until they secured a total of $1.5 million to get the business fully operational. Although Creasman and Wilkerson used the funds from Sims' loan to pay themselves weekly salaries of $600 each, rather than construct greenhouses as provided in the promissory note, these payments are not, as a matter of law, a business practice that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith. As the fact-finder in this case, the trial court was authorized to reject Sims' claim that the payment of salaries subsequent to the execution of the promissory note showed that Creasman lacked the present intent to comply with the agreement at the time the agreement was executed. *See Pacrim Assocs. v. Turner Home Entm't*, *Inc.*, 235 Ga. App. 761, 767 (3) (510 SE2d 52) (1998) (trial court properly granted summary judgment to defendant where no evidence showed defendant had a present intent not to comply with its promise to retain plaintiff as an exclusive licensing agent for one year); *Futch v. Lowndes Cnty.*, 297 Ga. App. 308, 311 (1) (676 SE2d 892) (2009) (affirming grant of summary

6

judgment to county where no evidence showed that county's promise to re-grade ditch was made with present intent not to perform). Therefore, the trial court was authorized to conclude that Creasman did not commit fraud.

2. Sims next argues that the trial court erred in concluding that Creasman did not violate OCGA § 10-5-50, which provides:

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly: (1) To employ a device, scheme, or artifice to defraud; (2) To make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading; or (3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon a person.

OCGA § 10-5-50 requires a showing of intent to defraud. *See Branan v. State*, 285 Ga. App. 717, 720 (2) (a) (647 SE2d 606) (2007) (decided under previous Code section).

In support of Sims' argument that Creasman intended to defraud him in violation of OCGA § 10-5-50, Sims generally relies on the evidence regarding Creasman's payments of weekly salaries. We have already concluded above in Division 1, however, that the trial court was authorized to conclude that this evidence did not establish an intent to defraud.

7

Sims also argues that the promissory note[2] itself was fraudulent because it omitted the fact that Natural Products needed $1.5 million before it would construct a greenhouse. Even though the promissory note makes no mention of this requirement, Wilkerson testified that he and Creasman advised Sims that Natural Products needed $1.5 million to start the business, and Sims' loan or investment would be used to fund the company for a few months until they secured additional funding. Wilkerson testified that he and Creasman intended to pay Sims all that he was owed once they received additional funding to get the business operational. The trial court, as the fact finder in this case, was authorized to accept Wilkerson's testimony that Sims was aware that additional funding was required before Natural Products was operational. *See Hayes v. Alexander*, 264 Ga. App. 815, 817 (1) (592

---

[2]Because Wilkerson and Creasman intended to use Sims' funds in conjunction with additional investments, and promised a $375,000 return on his $150,000 "loan," the promissory note met the definition of a security as provided under OCGA § 10-5-2. *See Rasch v. State*, 260 Ga. App. 379, 384-85 (1) (579 SE2d 817) (2003) (a promissory note can be a security instrument if it is "an investment in a common venture; (2) premised on a reasonable expectation of profits; and (3) to be derived from the entrepreneurial or managerial efforts of others") (citations and punctuation omitted).

8

SE2d 465) (2003). Because there is evidence supporting the trial court's finding that

Creasman did not intend to defraud Sims, we must affirm.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur*.