**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 16, 2023**

# In the Court of Appeals of Georgia

A23A0835. COLEMAN v. PHILLIPS et al.

WATKINS, Judge.

Pamela Coleman appeals from the trial court's partial grant of summary judgment in favor of Arthur Phillips and the Phillips Firm, LLC (collectively, "Phillips") and the denial of her motion for summary judgment. The two parties — both attorneys — executed an attorney fee-sharing agreement regarding representation in a personal injury case. The trial court found that: (1) an issue of material fact existed as to whether Coleman withdrew from representation and, ultimately, whether Phillips breached the fee-sharing agreement; (2) Phillips was entitled to summary judgment on Coleman's fraud claim; and (3) Coleman's attorney-fee claim under OCGA § 13-6-11 was a question for the jury. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the respective non-moving parties below,[1] the record shows the following. In 2008, Mary Ellison was injured in a serious automobile collision. In September 2011, Ellison terminated the services of her initial attorney and hired Phillips to represent her. Ellison was a CPA who handled the accounting for Phillips's firm.

In May 2012, Phillips and Coleman executed an attorney fee-sharing agreement for the attorney fees in Ellison's personal injury lawsuit. Coleman was a former employee of Phillips who had left Phillips's firm in 2009. The agreement, effective in February 2012, provided that Phillips would receive one-third of the attorney fees and that Coleman would receive two-thirds of the attorney fees "as a result of either or both of the parties' representation" in Ellison's lawsuit. Each party had an obligation to notify the other of any settlement and to ensure that "any" settlement proceeds be made payable to Ellison, Phillips, and Coleman. A later section in the agreement further provided that Coleman was entitled to

> a lien for attorney fees — said fees to be deemed reasonable if calculated at Coleman's regular hourly rate — for all services and all costs advanced on all claims and causes of action that are subject to the representation of [Ellison] and on all proceeds of any recovery obtained

---

[1] See *Griffin v. State Bank of Cochran*, 312 Ga. App. 87 (718 SE2d 35) (2011).

by any person or entity . . . whether such recovery is obtained by settlement, arbitration award, or court judgment, and notwithstanding whether Coleman is discharged or withdraws from the case prior to its resolution by any means.

Ellison did not sign the fee-sharing agreement. She attested in an affidavit that the attorneys never informed her of the agreement and consequently she never approved it.

In June 2013, Coleman and Phillips settled a portion of Ellison's claim for $50,000. Phillips disbursed $11,165.55 to Coleman, which represented two-thirds of the attorney fees generated from the settlement. Ellison approved of the settlement and expenses, "as well as the attorneys [that] were paid." The remaining issue in Ellison's case was her claim against the uninsured/underinsured motorist ("UM") insurance carrier.

At this point, the parties differ on Coleman's continued representation. Phillips contends that Coleman did no further work on the case. He contends that Coleman had taken a position at a different law firm, and that Coleman had told him that as a result she had a conflict with the UM carrier and thus she returned the case file to him. In an answer to Coleman's interrogatories, Phillips stated that after he had told Ellison of the conflict, she was "happy that [Coleman] was no longer involved in the

3

case" because Ellison "had not been happy" with Coleman's services. Ellison told Phillips that she had already "planned" to terminate Coleman, but did not want to offend Phillips because Coleman had previously worked in his office.

Ellison, for her part, attested that following the June 2013 settlement, she "terminated" Coleman's services and instructed Phillips "not to use [Coleman] nor allow her to participate in the remaining portions of the case." Ellison stated that she had learned of Coleman's conflict of interest and, after the June 2013 settlement, Ellison received no further communications from Coleman.

Coleman denied that she had a conflict with the UM carrier, denied withdrawing from the case, and denied that Ellison had terminated her. Rather, Coleman contended that she had communicated to Phillips that she would be unable to try the case if it went to trial due to her full-time employment with her new firm. She asserted that she continued to work on the case following the June 2013 settlement, which included preparing the case for trial, answering discovery requests, communicating with the UM carrier, and collecting additional medical bills. Coleman contended that she remained an attorney of record in the case. She also included several e-mails from July 2013 to October 2014 that, although heavily redacted in the appellate record, appear to show communications between her and Phillips about the

4

remaining UM claim and preparing for trial. In an e-mail exchange from May 2014, Coleman appears to have reminded Phillips that she "won't be able to try [the case]" but could assist Phillips in preparing before trial. Phillips appears to have responded that he "need[ed] [Coleman] to totally prepare the case and I [Phillips] will try." In a later exchange in October 2014, Coleman appears to have stated that she was "going" to withdraw from the case. She told Phillips that she had prepared the case for trial, and that, as they had discussed previously, she would redraft the fee agreement to a one-half/one-half split, rather than two-third/one-third, because she would "not be trying the case." Coleman contended that she ultimately did not withdraw or modify the agreement because Phillips indicated he was "slowing down" and may have to "get someone else to handle the case."

Phillips hired Alex Smith who started working on the case in March 2015. According to Smith, Coleman had told him that she had a conflict of interest. In November 2015, Smith settled the lawsuit with the UM carrier. The UM carrier issued a $115,000 settlement, with Phillips's firm collecting $28,750 in attorney fees. Phillips did not disburse any of the fees to Coleman. Coleman became aware that the case had settled approximately three weeks later.

Coleman subsequently filed a lawsuit against Phillips, asserting claims of breach of contract and fraud, and seeking punitive damages and attorney fees under OCGA § 13-6-11. The parties filed cross-motions for summary judgment. Following a hearing, the trial court: (1) granted summary judgment in favor of Phillips on Coleman's fraud claim; (2) found that there was a jury question as to whether Coleman withdrew from representation and, ultimately, whether Phillips breached the fee-sharing agreement; and (3) found that there was a jury question as to whether Coleman was entitled to attorney fees under OCGA § 13-6-11. This appeal from Coleman followed.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

With these guiding principles in mind, we now turn to Coleman's claims of error.

---

[2] (Citations and punctuation omitted.) *Griffin*, 312 Ga. App. at 87.

1. Coleman argues that the trial court erred in failing to grant summary judgment on her breach of contract claim. She contends the contract is clear that she is entitled to fees following the November 2015 settlement.

"[I]t is a general rule of contract law that unless prohibited by statute or public policy the parties are free to contract on any terms and about any subject matter in which they have an interest[.]"[3] "[W]here the language at issue is plain and unambiguous, we presume that the parties meant what they said and we simply enforce the contract as written."[4] "[T]hat it may be unwise or disadvantageous [to] one party furnishes no reason for not enforcing the contract as made."[5]

Here, the fee-sharing agreement is clear that Coleman should receive two-thirds of the attorney fees "as a result of either or both of the parties' representation" in Ellison's lawsuit. Thus, absent a public policy exception, the contract is enforceable as written.[6]

---

[3] (Citation and punctuation omitted.) *Cleveland Motor Cars, Inc. v. Bank of America, N.A.*, 295 Ga. App. 100, 102 (670 SE2d 892) (2008).

[4] *Bearoff v. Craton*, 350 Ga. App. 826, 834 (1) (830 SE2d 362) (2019).

[5] (Citation and punctuation omitted.) *EZ Green Assocs., LLC v. Ga.-Pacific Corp.*, 318 Ga. App. 655, 660 (1) (b) (734 SE2d 485) (2012).

[6] See *Bearoff*, 350 Ga. App. at 834 (1).

Under OCGA § 13-8-2 (a), "[a] contract that is against the policy of the law cannot be enforced." In its order, the trial court found that an issue of material fact remained as to whether Coleman withdrew from representation. We thus address below whether this factual dispute could invalidate the fee-sharing agreement. We note at the outset of this analysis that "courts must exercise extreme caution in declaring a contract void as against public policy and may do so only where the case is free from doubt and an injury to the public clearly appears."[7]

"When the contingency justifying a fee has not yet occurred, the discharged attorney has no basis for collecting a fee connected to that contingency."[8] "To allow a discharged attorney to collect an equal share of a contingency fee as if the attorney were still involved in a case would render the discharge meaningless."[9] "The existence of [a fee-sharing agreement] between the lawyers does not affect the underlying policy against allowing a discharged lawyer to collect contingent attorney

---

[7] (Citation and punctuation omitted.) *Innovative Images, LLC v. Summerville*, 309 Ga. 675, 681 (3) (a) (848 SE2d 75) (2020).

[8] (Citation and punctuation omitted.) *The Eichholz Law Firm, P.C. v. Tate Law Group, LLC*, 310 Ga. App. 848, 850 (1) (714 SE2d 413) (2011).

[9] *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*, 277 Ga. App. 512, 514 (627 SE2d 112) (2006).

8

fees."[10] This policy is founded in the principle that "a client has the absolute right to discharge the attorney" and "[a] client must be free to end the relationship whenever [s]he ceases to have absolute confidence in either the integrity or the judgment or the capacity of the attorney."[11] In the lack of an express agreement through which an attorney could obtain fees in the event of termination, the attorney is limited to seek recovery through quantum meruit.[12] Even where there is an express provision regarding termination, a discharged attorney cannot collect a penalty that deters a client from exercising her legal right to termination.[13] We note that the principles described in *Eichholz* and *Kirschner* cited above apply equally to withdrawal as they do to termination.

Here, a fact question exists as to whether Coleman withdrew and/or was terminated from representation. Phillips and Smith both attested that Coleman

---

[10] *Eichholz*, 310 Ga. App. at 851 (1). Like in this case, the dispute in *Eichholz* involved a fee-sharing agreement between two attorneys. Id. at 848-849.

[11] (Citations and punctuation omitted.) *Aflac, Inc. v. Williams*, 264 Ga. 351, 353 (1) (444 SE2d 314) (1994).

[12] See *Eichholz*, 310 Ga. App. at 853 (1) (allowing a discharged law firm to recover in quantum meruit for services it provided to another law firm pursuant to their joint venture); *Kirschner*, 277 Ga. App. at 513.

[13] See *Williams*, 264 Ga. at 353 (1).

withdrew after the June 2013 settlement due to a conflict with her new firm. Ellison stated that she terminated Coleman following the first settlement. By contrast, Coleman denies that she withdrew or that Ellison terminated her, and contended that she continued working on the case, sometimes at Phillips's direction. Given this factual dispute, the trial court did not err in finding that the disputed facts precluded summary judgment.

If the factfinder determines that Coleman withdrew or was terminated from representation, then the "the fee-splitting provisions cannot be enforced" and Coleman can only recover in quantum meruit.[14] While the fee-sharing agreement contemplated a lien on fees in the event of termination, the contract did not contain an "express" provision entitling Coleman (or Phillips) to a contingency following termination.[15]

If the factfinder determines that Coleman did not withdraw and was not terminated, then Coleman is entitled to her share of the attorney fees under the fee-

---

[14] *Eichholz*, 310 Ga. App. at 853 (1).

[15] See id. at 851 (1).

sharing agreement.[16] Although Phillips disputes the amount of services Coleman provided following the June 2013 settlement, it is clear that Coleman performed some work on the case, especially leading up to the first settlement. In this instance, "the court[ ] will not engage in the cumbersome task of evaluating after the fact the relative contributions made by the bickering attorneys[,]"[17] and we will simply enforce the contract as written.[18]

2. Coleman argues that the trial court erred in granting summary judgment in favor of Phillips on her claims for fraud and punitive damages. She contends that Phillips never intended to perform under the fee-sharing agreement.

> In most circumstances, actionable fraud cannot be predicated on a promise contained in a contract because the promise is to perform some act in the future, and normally, fraud cannot be predicated on statements which are in the nature of promises as to future events. However, an exception to the general rule exists where a promise as to

---

[16] We express no opinion as to the applicability of Rule 1.5 (e) of the Georgia Rules of Professional Conduct, found in Bar Rule 4-102 (d), to the enforcement of the fee-sharing agreement. Phillips did not argue that Rule 1.5 (e) barred enforcement of the agreement in his response to Coleman's motion for summary judgment or on appeal. Nor did the trial court explicitly rely on this Rule in its order.

[17] See *Nickerson v. Holloway*, 220 Ga. App. 553, 553-554 (1) (469 SE2d 209) (1996).

[18] See *Bearoff*, 350 Ga. App. at 834 (1).

11

future events is made with a present intent not to perform or where the promisor knows that the future event will not take place.[19]

"Actionable fraud . . . does not result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud."[20]

In this case, the trial court found that, because Phillips gave Coleman two-thirds of the attorney fees from the July 2013 settlement, Coleman could not demonstrate a present intent not to perform at the time of the signing to the contract. We agree. Coleman points to Phillips's filings in this case where he contended that the agreement was "void at its inception" and that "[t]he fee division was not made as a result of an alleged . . . sharing agreement but was made due to the customary practice of . . . Phillips[.]" Despite these legal positions, Phillips's actions still comported with the fee-sharing agreement with regard to the July 2013 settlement. Thus, Coleman has not created a genuine issue of fact on Phillips's present intent not

---

[19] (Citation and punctuation omitted.) *Sims v. Natural Products of Ga., LLC*, 337 Ga. App. 20, 22 (1) (785 SE2d 659) (2016).

[20] (Citation and punctuation omitted.) Id.

12

to perform.[21] We therefore affirm the trial court's grant of summary judgment in favor of Phillips on Coleman's fraud and punitive damages claim.[22]

3. Finally, Coleman argues that the trial court erred in denying summary judgment on her claim of attorney fees. In her motion for summary judgment, Coleman sought attorney fees under OCGA § 13-6-11 and under the provisions of the fee-sharing agreement.

OCGA § 13-6-11 provides that: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

---

[21] See *Futch v. Lowndes County*, 297 Ga. App. 308, 311 (1) (676 SE2d 892) (2009) (affirming summary judgment in favor of the defendant on the plaintiff's fraud claim where the defendant attempted to perform under the contract); *Equifax, Inc. v. 1600 Peachtree, L.L.C.*, 268 Ga. App. 186, 196 (601 SE2d 519) (2004) (rejecting a fraud claim because "Equifax was under no duty to disclose its own interpretation of its contractual obligations or the fact that it was contemplating asserting the defense of discharge.").

[22] See *Walia v. Walia*, 356 Ga. App. 387, 391 (3) (847 SE2d 8) (2020) ("Punitive damages are not recoverable in actions for breach of contract, even if the breaching party did so in bad faith.")

Based on the statutory language "the jury may allow them[,]" we have held that a trial court cannot award attorney fees under OCGA § 13-6-11 at summary judgment:

> Attorney fees cannot be awarded by a trial court pursuant to OCGA § 13-6-11 at the summary-judgment stage of proceedings because the very language of the statute prevents a trial court from ever determining that a claimant is entitled to attorney fees as a matter of law. Because both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, a trial court is not authorized to grant summary judgment in favor of a claimant therefor. And although a trial court is permitted to grant such fees when it sits as a trier of fact, it is not a trier of fact on a motion for summary judgment.[23]

Accordingly, the trial court did not err in finding that Coleman's attorney fee claim under OCGA § 13-6-11 was a question for the jury. And while the fee-sharing agreement also provided for attorney fees to the prevailing party in enforcing the agreement, issues of fact remain, as explained in Division 1 above.

In summary, we affirm the trial court's findings that: (1) an issue of material fact existed as to whether Coleman withdrew or was terminated from representation;

---

[23] (Citation and punctuation omitted.) *Ga. Lottery Corp. v. Vasaya*, 353 Ga. App. 52, 57-58 (3) (836 SE2d 107) (2019).

(2) Phillips was entitled to summary judgment on Coleman's fraud claim; and (3) Coleman's attorney fee claim under OCGA § 13-6-11 was a question for the factfinder. As discussed in Division 1, the factfinder's resolution of whether Coleman withdrew and/or was terminated from representation will determine whether the fee-sharing agreement is enforceable. If Coleman was not terminated and did not withdraw, then she is entitled to her share of fees in accordance with the fee-sharing agreement.

*Judgment affirmed. Barnes, P. J., and Land, J., concur*.